574 A.2d 12

**Howard Earl SIMMS**

v.

**STATE of Maryland.**

**No. 1542, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 31, 1990.

Diane G. Goldsmith, Assigned Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and William R. Hymes, State's Atty. for Howard County, Ellicott City, on the brief), for appellee.

Argued before ROSALYN B. BELL, KARWACKI and WENNER, JJ.

ROSALYN B. BELL, Judge.

Howard Earl Simms appeals his convictions and sentences from the Circuit Court for Howard County. On December 17, 1987, Simms was charged with daytime housebreaking (Count I), felony (Count II) and misdemeanor theft (Count

III), receiving stolen goods (Count IV) and malicious destruction of property (Count V). At a jury trial in February, 1989, the trial judge granted his motions for judgment of acquittal on Counts II, IV and V. The jury returned guilty verdicts on the daytime housebreaking and misdemeanor theft charges. After the jury returned its verdicts, the State's Attorney informed Simms that the State sought a mandatory sentence of life without possibility of parole under Md.Code Ann. Art. 27, § 643B(b) (1957, 1987 Repl. Vol.). Pursuant to that statute, Simms was sentenced to life without parole on the daytime housebreaking charge and 18 months concurrent on the misdemeanor theft conviction. Simms appeals, contending the trial court erred:

—by refusing to dismiss the charges against him since they were not set for trial within 180 days, and there was no postponement for good cause;

—by permitting the State to introduce evidence of other crimes and evidence relating to his flight and arrest on this other crime; and

—by sentencing him to life imprisonment without possibility of parole.

We disagree with all of these contentions and affirm the judgments of the trial court.

## FACTS

Simms was charged with crimes arising from a housebreaking which occurred between 12:40 p.m. and 3:30 p.m. on November 17, 1987 at the home of Betsy and Silas Ayer in Howard County. Mrs. Ayer returned from work that day between 3:30 and 4:00 p.m. and found that someone had broken into and ransacked her house. She realized that a Montgomery Ward credit card, along with other possessions, was missing. Mrs. Ayer reported the crime to the police. Officer Gerald Fishkorn [1] responded, took a report

---

1. The briefs refer to this police officer as "Fishkorn," so we will do so as well. We note, however, that his name is spelled "Frischkorn" on several documents in the record.

and contacted Detective Martin of the Howard County Police Department.

At approximately 10:00 p.m. on November 17, Fishkorn was contacted by Officer Louis Harvey of the Baltimore County Police Department. Harvey testified that at about 8:30 p.m. on November 17, 1987 he received a call to report to the Montgomery Ward store located at the corner of Rolling Road and Route 40 in Baltimore County. Upon arrival, he went to the store's loss prevention security office, where the store operated a closed circuit television security system. A man, later identified as Simms, was at the jewelry counter. Based on information Harvey received from the security officers, he stationed two police officers in the area near the jewelry counter and gave them a description of Simms. Simms fled the area and was apprehended by police and security guards. A video tape of the incident showed a person at the counter for some time who then ran away. The tape also recorded the arrest, about half of which was played to the jury.

Simms was arrested for theft and misuse of a credit card. Mr. Ayer's Montgomery Ward card was recovered from the store, but not from Simms' possession. At oral argument, however, Simms' counsel stated that there was an offer to stipulate to his possession.

After Simms was given his *Miranda*[2] warnings, Harvey asked him how he obtained the credit card. Simms responded that a man named James (or Jim) had given him the card to use. Simms later said that he had paid James $25 for the card. A search and seizure at Simms' residence yielded none of the items stolen from the Ayer home.

On November 20, 1987, Martin went to the Baltimore County Detention Center to question Simms. He asked Simms where he had been on the afternoon of November 17, 1987. Simms said he had been in the Pimlico area and

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

had not been in Howard County that day. Simms repeated his story that he purchased the credit card from a man named James.

## TRIAL WITHIN 180 DAYS

■ Appellant contends that the trial court erred in refusing to dismiss the charges against appellant when they were not set in for trial within 180 days. Further, appellant posits that improper procedure was followed since no postponement for good cause was obtained from the administrative judge or his designee. This claim is without merit.

The Office of the Public Defender first entered an appearance on behalf of appellant on February 26, 1988.[3] Thus, according to the provisions of Md.Code Ann. Art. 27, § 591 (1957, 1987 Repl.Vol.), and Rule 4–271(a), trial had to be set by August 24, 1988. Karl Goodman entered his appearance for appellant on March 18, 1988 and the Public Defender's appearance was struck. Trial was postponed from April 20 to July 27, 1988. On June 7, the State requested a second postponement. The case was reset for trial on August 15, 1988. On July 22, 1988, the trial court issued an order granting a motion to strike Karl Goodman's appearance.

The case was called for trial on August 15, 1988. The State was ready for trial. Appellant, however, failed to appear. The Assistant State's Attorney told the trial judge that she had been in contact with a Baltimore County Assistant State's Attorney the week before and was advised that appellant was suspected of having fled to North Carolina. The State's Attorney also told the judge that it was day 171 of the 180–day period and that the State was ready for trial. The trial judge issued a bench warrant and revoked appellant's bond.

---

**3.** We are not certain what occurred between December 17, 1987, when Simms was charged, and February 26, 1988. The record does indicate that Simms may have been released on bail.

The case was continued without a new trial date. On September 15, 1988, the bench warrant was lodged as a detainer at the Baltimore City Jail, and trial was reset for October 14, 1988. On that day, appellant appeared for trial. The Public Defender reentered an appearance and requested a postponement, which was granted.

Appellant filed a motion to dismiss the charges for a violation of Rule 4–271. A hearing was held on this motion and appellant testified that he was in the Baltimore City Jail on his Howard County trial date of August 15, 1988. He claimed that a friend had told him of his court date and he advised his friend to tell the court his whereabouts. The trial judge made certain findings of fact, and ruled that it would not be appropriate to dismiss the case because the State failed to bring appellant to trial within 180 days, particularly since appellant asked for a postponement on October 24, 1988. We agree.

The State was prepared to go forward with the case on August 15, 1988 and "was prevented from doing so only by the constitutional prohibition against trying appellant *in absentia.*" *Simms v. State,* No. 422, September Term, 1989, filed November 20, 1989, per curiam, slip op. at 1 (appeal from Baltimore County proceedings where appellant was *not* a fugitive). The State believed appellant had fled the jurisdiction, and the trial court issued a bench warrant for his arrest. This procedure was proper. Appellant points out that in *Brady v. State,* 291 Md. 261, 267, 434 A.2d 574 (1981), the Court of Appeals said:

> "[T]he State, in the performance of its public trust, has a duty to coordinate the efforts of its various criminal divisions in attempting to locate a defendant."

While that is the statement made, we find *Brady* inapposite. *Brady* involved a speedy trial issue in which six months of the delay occurred because the State made no effort to locate the defendant, although he was incarcerated in the Baltimore City jail on an unrelated charge. In the instant case, the defendant failed to appear for a trial date.

At that point, the responsibility fell to the bondsman to locate the defendant.

Appellant's contention that a continuance from an administrative judge should have been sought is equally without merit. We see no "expertise" that an administrative judge would have to offer in this situation. As the State points out, the process of asking the administrative judge for a postponement is intended as a safeguard because

"it is the administrative judge who has an overall view of the court's business, who is responsible 'for the administration of the court,' who assigns trial judges, who 'supervise[s] the assignment of actions for trial,' who supervises the court personnel involved in the assignment of cases, and who receives reports from such personnel.

"Consequently, the administrative judge is ordinarily in a much better position than another judge of the trial court, or an appellate court, to make the judgment as to whether good cause for the postponement of a criminal case exists." (Footnotes omitted.) (Brackets in original.)

*State v. Frazier*, 298 Md. 422, 453–54, 470 A.2d 1269 (1984). Such a procedure, generally required for postponements, would have no real value here, since a new date could not be set until appellant's whereabouts were known. Finally, appellant suggests the case should have been sent to the administrative judge as he or she could have located appellant within the system and brought him to trial within the 180 days. We are not prepared to add that burden to that office where no information is currently made available to the court on appellant's whereabouts.

## OTHER CRIMES EVIDENCE

Appellant contends that the trial court erred by permitting the State to introduce evidence of other crimes. Defense counsel filed a motion *in limine* seeking to exclude from the State's evidence all references to the circumstances at Montgomery Ward's on November 17, 1987. Appellant's attorney indicated that this motion would encompass the videotape obtained from the closed circuit television

monitoring in the store. After hearing argument on the motion *in limine*, the court ruled that, despite the fact that the videotape was evidence of appellant's bad act, with a proper limiting jury instruction, the evidence could be admitted because it was relevant and fell under a number of exceptions to the other crimes evidence rule. The court reserved its ruling on the videotape and granted defense counsel's request for a continuing objection. Later, the court held that the videotape could be played, observing that, although the video showed appellant's flight from the store, that flight was a relevant issue in this case.

The law in the area of evidence of other crimes has most recently been revisited and reassessed in *Harris v. State*, 81 Md.App. 247, 567 A.2d 476 (1989), *cert. granted*, 319 Md. 111, 570 A.2d 1244 (1990):

> "Whenever evidence of prior misconduct is offered for any purpose other than to show propensity, it is, subject only to the universal balancing of relevance and its counterweights, presumptively admissible."

*Harris*, 81 Md.App. at 270, 567 A.2d 476. *Harris*, however, did not change the law in this area; it simply changed the overall construct from one of exclusionary rule with exceptions to a general rule of inclusion with the exception of showing propensity to commit bad acts. The Court of Appeals has recently stated that evidence of other crimes is admissible if substantially relevant to prove some essential fact in dispute in the crime on trial. For example, the so-called "mimic" exceptions, which include the identity of the perpetrator, the subject at issue in the case at bar,[4] have long been recognized as supporting the admission of evidence which is also evidence of a defendant's involvement with another crime.

---

4. Additionally, the State argues that the evidence showed a common scheme or plan to commit a breaking and entering in order to use the credit card. After *Harris*, we no longer adhere to this view of "other crimes" evidence law which asks for "the specific exception" into which evidence can be categorized. We simply state that the evidence was relevant to prove guilt in several different ways.

But we agree that proof of identity need not be viewed as an exception. As Judge Moylan stated:

"The very idea of a lengthy, albeit neat and tidy, laundry list of purposes is an absurdity when the only pertinent question needs to be whether the evidence is relevant to prove guilt in some way other than by showing propensity." (Footnote omitted.)

*Harris,* 81 Md.App. at 280, 567 A.2d 476. Thus, the issue is whether the videotape was relevant to prove appellant's guilt "in some way other than by showing propensity." We hold that the trial judge correctly admitted the videotape into evidence.

At oral argument, appellant claimed that his offer to stipulate that he had the credit card vitiated the State's need for this evidence. At trial, however, defense counsel merely proffered what the State's evidence would show, and stated that the State could use civilian witnesses rather than police officers to establish appellant's possession of the credit card in the store. This, as the State observed, is not the equivalent of a stipulation.

The identity of the user of the credit card was the focal point of this case since appellant did not admit possession of the credit card. We find this refusal to admit possession odd since appellant claimed he obtained the credit card from a man named James, and denied having been in Howard County on the day of the incident. We agree with the State that the fact that appellant used the credit card a mere five hours after the breaking and entering was discovered and his flight upon being discovered is relevant to proving appellant's guilt without simply showing propensity. Additionally, it is well established that, absent a reasonable explanation, the defendant's possession of recently stolen goods will support a factual inference that he is the thief. *Cross v. State,* 282 Md. 468, 480, 386 A.2d 757 (1978). The trial court did caution the jury that it should consider the video tape only insofar as it related to appellant's criminal agency in the breaking and entering of the Ayer home.

## LIFE IMPRISONMENT WITHOUT PAROLE
### —Collateral Estoppel—

■ Appellant contends that the trial court violated collateral estoppel, as embodied in the Double Jeopardy Clause, by allowing the State to proceed under § 643B(b), when one of the predicate crimes to support that sentence had been ruled insufficient in another proceeding. Section 643B(b) provides:

> "(b) **Mandatory life sentence.**—Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory."

In short, appellant claims that, since the judge who presided over his Baltimore County trial concluded that appellant's 1970 conviction was not a predicate offense, the State was collaterally estopped from ever using this same conviction as a predicate offense, both in the present case and in any subsequent offenses. We disagree with appellant's claim.

Collateral estoppel is part of the double jeopardy prohibition which provides that no person shall be put in jeopardy twice for the same offense. *Ferrell v. State,* 318 Md. 235, 241, 567 A.2d 937 (1990). Generally, collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ferrell,* 318 Md. at 241, 567 A.2d 937.

Appellant refers to several cases which articulate this idea. *See Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *see also Powers v. State,* 285 Md. 269, 401 A.2d 1031, *cert. denied,* 444 U.S. 937, 100 S.Ct. 288, 62 L.Ed.2d 197 (1979). While we certainly agree with the basic principle, we do not agree with appellant that "[a]pplying these principles to the present case, it is clear that the *issue*

of the sufficiency of the State's evidence of a predicate offense in support of enhanced punishment was a valid and final judgment" or that "[t]he collateral estoppel protection contained within the double jeopardy prohibition applies to the present mandatory sentencing proceeding."

Appellant contends that the collateral estoppel aspect of double jeopardy has been applied in sentencing hearings. In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that double jeopardy applied to a capital sentencing proceeding because the Missouri procedure required the jury to choose between death or life imprisonment. Thus, the Court reasoned that this sentencing mechanism was, itself, a trial on guilt or innocence. *Bullington*, 451 U.S. at 438, 101 S.Ct. at 1861. But appellant overlooks the fact that the Court did not extend this principle to noncapital sentencing proceedings which do not have a "trial-like" flavor.

Next, appellant claims that both Maryland appellate courts have previously applied the double jeopardy bar to § 643B proceedings. He cites a Court of Appeals case involving the State's proof of a conviction of a crime of violence where there was a question of the legal sufficiency of the evidence. *See Temoney v. State*, 290 Md. 251, 429 A.2d 1018 (1981). Additionally, this Court has held that the *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), principle, that when an accused successfully obtains a reversal of his or her conviction because of insufficiency of the evidence, there can be no retrial because this would violate a defendant's double jeopardy protection, applies to a sentencing proceeding such as § 643B. *Butler v. State*, 46 Md.App. 317, 324, 416 A.2d 773, *cert. granted*, 288 Md. 732 (1980), but subsequently dismissed upon the State's motion. In *Temoney*, the Court of Appeals confronted a situation where a criminal defendant had convictions from the District of Columbia. The Court observed:

"While the defendant's District of Columbia convictions may in fact have been violent crimes, this is not necessar-

ily so, nor is it discernible from the docket entries received into evidence. The State has thus failed to introduce evidence showing that the District of Columbia convictions were '[c]rimes of violence' within the meaning of Art. 27, § 643B. Without the use of the District of Columbia convictions for robbery and attempted robbery as prior convictions of violent crimes, the evidence in this case is insufficient to support a mandatory sentence under the provisions of § 643B(c)." (Footnote omitted.) (Brackets in original.)

*Temoney*, 290 Md. at 263–64, 429 A.2d 1018. Although § 643B(b) is at issue in the instant case, not § 643B(c), the principle is the same: the State failed to show the necessary predicate offense. From this language, appellant leaps to the conclusion that, once the State fails to make this showing, it is forever precluded from doing so. This leap falls short because *Temoney* did not suggest that this finding would be binding on later sentencing proceedings.

Moreover, *Bowman v. State*, 314 Md. 725, 739–40, 552 A.2d 1303 (1989), which appellant cites, simply said that the State is precluded from proving an enhanced sentence under § 643B, following an appellate reversal of such a sentence based on insufficiency of the evidence. *Bowman* explicitly relies on *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). *Lockhart* presented the question "whether the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction." *Lockhart*, 109 S.Ct. at 290. The Court opined that *Burks* required the answer to be in the affirmative. The Court did not decide "whether the rule that the Double Jeopardy Clause limits the State's power to subject a defendant to successive capital sentencing proceedings ... carries over to noncapital sentencing proceedings," *Lockhart*, 109 S.Ct. at 286, n. 6, because the State did not argue that part of double jeopardy law.

At oral argument, defense counsel admitted that the Court of Appeals has yet to address this precise issue of collateral estoppel. But from the extant Maryland case law, particularly *State v. Tichnell,* 306 Md. 428, 463, 509 A.2d 1179 (1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986), *reh'g denied,* 479 U.S. 1060, 107 S.Ct. 942, 93 L.Ed.2d 992 (1987), where the Court dismissed the claim that "the sentencing jury in *Tichnell III* was collaterally estopped from finding fewer mitigating circumstances than those previously found by the sentencing authority in *Tichnell II* [,]" we believe that the policy of this State ought to be against the use of collateral estoppel in this particular circumstance. In addition, the Supreme Court's position in *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986), supports our holding that the State is not foreclosed from reproving predicate offenses in subsequent sentencing proceedings. In *Poland,* the Court found that a capital sentencer's rejection of an "aggravating circumstance" was not the equivalent of an acquittal of that circumstance for purposes of double jeopardy. The State was allowed to reprove that circumstance in a second proceeding where the evidence was sufficient to sustain the initial sentence of death. The instant case is analogous.

—Absence From Bench Conference in 1972 Conviction—

 Appellant contends that the trial court erred by sentencing him to life imprisonment without the possibility of parole because he was absent from bench conferences during a 1972 conviction for armed robbery. According to his argument, his absences invalidate that conviction for purposes of predicate conviction for enhanced sentencing purposes. Appellant does point out that this argument has previously been made to and rejected by this Court:

> "With the exception of a case where the fact of the record reflects that a defendant did not have the assistance of counsel at an earlier trial, a prior conviction may not be collaterally attacked in a sentencing proceeding in a subsequent case."

*Simms,* slip op. at 2. We agree with this decision made by our brethren who relied on *Johnson v. State,* 303 Md. 487, 535, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986), where the Court of Appeals stated:

> "Where a defendant was represented by counsel when he was previously convicted, unless the defendant before trial obtains an adjudication that counsel's representation at the time of the prior conviction was constitutionally inadequate, the prior conviction is prima facie valid, and the trial court is entitled to rely upon such validity."

We agree with the State that a prior conviction cannot be collaterally attacked in a sentencing proceeding in a subsequent case. Appellant has post conviction relief avenues for that case; he cannot now contend that his 1972 conviction was invalid because he was not present at bench conferences.[5] Further, the trial court *did* consider appellant's claim and found that, if he had been absent, his absence was harmless beyond a reasonable doubt. *See Noble v. State,* 293 Md. 549, 571–72, 446 A.2d 844 (1982) (defendant's absence from hearing statements of a potential juror was harmless error).

### —Same Predicates for Sentence of 25 years as for Life—

■ Appellant urges now, as he did at trial, that the State could not rely on the same predicate crimes for the imposition of a sentence of life without possibility of parole as those used for the imposition of the 25 years without

---

5. Appellant criticizes this Court's opinion in the prior case, citing *Raiford v. State,* 296 Md. 289, 462 A.2d 1192 (1983), for the proposition that, where a prior predicate conviction was held to be unconstitutional, it could not be used as a predicate offense for purposes of § 643B(c). We disagree. *Raiford* did not concern the validity of the predicate conviction. Rather, the focus was on the violation of the Equal Protection Clause that would occur if the State could use a conviction pursuant to a statute that was later found to be unconstitutional.

parole sentence. In essence, appellant contends that using the same convictions twice is tantamount to "multiple punishment for the same offense" which violates the Double Jeopardy Clause. We disagree.

The purpose of § 643B "is to protect the public from assaults upon people and injury to property and to deter repeat offenders from perpetrating other criminal acts of violence." *Hawkins v. State,* 302 Md. 143, 148, 486 A.2d 179 (1985). The statute simply increases the penalty for the latest crime based on the defendant's recidivism. Appellant is not, as he claims, being penalized twice for the prior crimes. The State properly used the predicate offenses invoked in the Baltimore County proceeding again in the Howard County sentencing.

Appellant's call for an extension of *Calhoun v. State,* 46 Md.App. 478, 418 A.2d 1241 (1980), *aff'd,* 290 Md. 1, 425 A.2d 1361 (1981), is inapposite. *Calhoun* simply held that § 643B(c) permits the imposition of a single sentence of 25 years without parole based on a third conviction of a crime of violence. There is nothing in *Calhoun* which suggests that the same prior crimes may not support different enhanced sentences.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.