691 A.2d 730

STATE of Maryland

v.

Larry **Emmanuel DORSEY.**

No. 1087, Sept. Term, 1996.

Court of Special Appeals of Maryland.

March 31, 1997.

680

Devy Patterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Jack B. Johnson, State's Attorney for Prince George's County, Upper Marlboro, on the brief), for appellant.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellee.

Argued before MOYLAN, WENNER and HOLLANDER, JJ.

MOYLAN, Judge.

The appellee, Larry Emmanuel Dorsey, was indicted by a Prince George's County grand jury on charges of child abuse and battery on October 2, 1995. On June 22, 1996, a Prince George's County circuit judge dismissed all charges against the appellee because of the State's failure to bring him to trial within the 180–day period mandated by Md. Ann.Code, art. 27, § 591 (1996) and Maryland Rule 4–271. From that decision, the State has taken the present appeal.

Taking its name from *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), the 180–day requirement mandated by both the Maryland statute and the Maryland Rule is frequently referred to informally as the *Hicks* Rule and we will in this opinion from time to time utilize that shorthand reference. Our decision is that the *Hicks* Rule was not violated. Indeed, in one important respect the *Hicks* Rule may not even have been involved.

The *Hicks* Rule requires that a criminal defendant be brought to trial within 180 days of the earlier of 1) his first

appearance before the circuit court or 2) the first appearance of counsel on his behalf. Following the indictment of the appellee on October 2, 1995, he was arraigned in the Circuit Court for Prince George's County on October 20. The 180-day clock, therefore, began to run on that day. Absent good cause for noncompliance, the latest day on which the appellee could have been brought to trial within the contemplation of the *Hicks* Rule was April 17, 1996.

The appellee's trial date was scheduled for April 1, 1996 before Judge Arthur M. Ahalt, sixteen days prior to the expiration of the 180–day period. On that day, however, the appellee failed to appear for trial. Defense counsel explained to the court that the appellee was absent because on the previous day, on the advice of counsel, he had voluntarily turned himself in to the Montgomery County Detention Center on an outstanding bench warrant in an unrelated case. Judge Ahalt postponed the case and ordered that a bench warrant be issued so that the appellee would be detained following the resolution of the charges in Montgomery County. He further ordered that the appellee's bond be revoked. It is undisputed that Judge Ahalt was acting as neither the administrative judge nor as his designee when postponing the case.

The appellee was returned to Prince George's County on May 30. On June 2, his trial date was rescheduled for July 30, 1996, some three months after the expiration of the April 17 deadline. Prior to the second trial date, defense counsel filed a Motion to Dismiss all charges because of a failure of either the administrative judge or said designee to hold a good cause hearing prior to allowing the 180 days to lapse. At the conclusion of a hearing on June 28, all charges against the appellee were dismissed. The trial court, in granting the dismissal, explained:

> There had been no finding of good cause by either the Administrative Judge or his designee within the 180 days mandated by Rule 4–271. That Mr. Dorsey was not brought to trial within the 180 days as mandated by Rule 4–271. Consequently, I find a violation of Rule 4–271, and

that mandates that I dismiss the indictment against Larry Emmanuel Dorsey, and I do so.

The State noted this timely appeal.

### A Bifurcated Analysis

A preliminary word is in order about our analytic approach. We do not look at the time period from April 1, the date of the critical postponement, through July 30, the rescheduled trial date, as some indivisible *gestalt.* We will, rather, examine separately 1) the postponement of April 1 and 2) the rescheduling over the course of the ensuing weeks and months.

■ In adopting this bifurcated analytic approach, we rely heavily on *State v. Parker,* 338 Md. 203, 657 A.2d 1158 (1995), *Rosenbach v. State,* 314 Md. 473, 551 A.2d 460 (1989), and *State v. Frazier,* 298 Md. 422, 470 A.2d 1269 (1984). Those cases, to be sure, involved situations in which the initial postponement was granted by the administrative judge or his designee. The appellee need not, however, endlessly reiterate that distinction to us, for we are not, at least at this stage of our analysis, looking to those cases for anything they may hold or imply on the merits of the initial postponement. We are offering them, at this stage of our analysis, only for the threshold principle that 1) the act of postponing and 2) the act of rescheduling may be separate and distinct legal phenomena that are susceptible of separate and distinct analysis.

In *State v. Frazier,* 298 Md. 422, 470 A.2d 1269 (1984), the Court of Appeals recognized that a *Hicks* problem does not necessarily involve a single monolithic judicial action. It frequently involves the consideration of two distinct judicial actions: 1) the act of postponing and 2) the act of rescheduling. Judge Eldridge observed:

[T]he requirement in § 591 and Rule 746 that there be "good cause" for a postponement of the trial date to a new date beyond the 180 day deadline has *two components:* 1. there must be good cause for not commencing the trial on the assigned trial date; 2. there must be good cause for the extent of the delay. . . . *In dealing with the issues in these*

*cases, it is important to distinguish these two aspects of "good cause."*

298 Md. at 448, 470 A.2d 1269 (emphasis supplied; footnote omitted). The *Frazier* opinion noted that the *Hicks* opinion itself had intimated that analysis of the larger problem could be broken down into component parts:

In the *Hicks* case, this Court implicitly recognized that there were two components to the "cause" requirement, for in holding that the requisite cause existed, we focused both upon the cause for the trial not going forward on the assigned date (the absence of the defendant) and the relatively short period of delay needed before the case could be tried (the following month).

*Id.* at 448 n. 19, 470 A.2d 1269, citing to 285 Md. at 318–19, 403 A.2d 356.

*Rosenbach v. State,* 314 Md. 473, 551 A.2d 460 (1989), involved that very principle of analytic bifurcation described by *State v. Frazier.* Judge Mary Arabian, as the duly appointed designee of the administrative judge, postponed a trial for the want of a courtroom. There were still approximately three months to run in the 180–day period within which trial should have been held. Judge Arabian did not deal with the question of whether the postponement might carry the trial beyond the 180–day limit. She did not, moreover, involve herself in the rescheduling problem; she simply ordered that the case be reset by the Central Assignment Office. It was rescheduled by that Office but for a time outside the 180–day limit.

The defense in *Rosenbach* argued that the *Hicks* Rule was violated because 1) the case was not reset within the 180–day limit and 2) "because neither Judge Arabian nor any other judge took an active part in seeing that the case was rescheduled." The Court of Appeals held that the issues of 1) who rescheduled the case and 2) when the rescheduled trial would be held were separate and distinct from the issue of whether Judge Arabian had good cause to grant the postponement that

had the effect of carrying the trial beyond the 180–day marker. Judge Adkins clearly enunciated the distinction:

It is clear, then, that *the question of good cause for postponement and the question of subsequent inordinate delay are separate issues.* When CAO [Central Assignment Office] sets a new trial date beyond the 180–day limit, *the inordinate delay issue may be implicated, but that action has no bearing on the question of whether good cause existed in the original grant of the postponement.*

314 Md. at 480, 551 A.2d 460 (emphasis supplied). The Court of Appeals went on both to reaffirm the analytic severability of the two distinct issues and also to make it clear that the act of rescheduling did not necessarily involve judicial participation. The postponing component involves a judicial action but the rescheduling component may be delegated to nonjudicial personnel, such as an assignment office or the State's Attorney's Office. Judge Adkins said in this regard:

Whether *a postponement is for good cause has nothing to do with whether the postponing judge delegates the assignment of a new trial date to an assignment office,* or with the length of time from postponement to actual trial. The critical postponement under the statute and rule is the one which, in fact, carries the case beyond the 180–day limit. *Whether the delay from postponement to trial is inordinate is a question separate from whether the postponement was for good cause.*

314 Md. at 481, 551 A.2d 460 (emphasis supplied).

A more recent case squarely on point is that of *State v. Parker,* 338 Md. 203, 657 A.2d 1158 (1995). In that case, the critical 180th day would have been reached on June 13, 1993. The trial was set for March 30, which was Day 106, still seventy-four days within the limit. Just as in the case now before us, the defendant failed to show up in court. Just as in the case before us, the judge postponed the case and issued a bench warrant for the defendant's arrest. Just as in the case before us, there was no discussion about whether the postponement would carry the case beyond the 180–day marker,

and there was no effort by the trial judge to involve himself in the rescheduling process. Scheduling and rescheduling was the responsibility of the State's Attorney's Office.

The defendant was arrested on the outstanding bench warrant on May 12, thirty-one days before the June 12 deadline. Notwithstanding the existence of that deadline, the State's Attorney's Office rescheduled the trial for July 21. At the hearing on whether there had been a violation of the *Hicks* Rule, the defendant argued that the prosecutor had an affirmative obligation to go to the administrative judge and to request a postponement beyond the 180–day limit once it became obvious to the prosecutor's office that it could not schedule the trial within that limit:

> *Parker contends* that the *Rosenbach* analysis does not apply in this case and *that the prosecutor had an obligation to go to the administrative judge when it became clear that the case could not be tried within the 180–day limit.* In Parker's words, "[i]f the combination of when the failure to appear occurred and the length of time it takes to correct it is such that the prosecutor cannot try the case within the 180 day limit, then *the prosecutor must go to the Administrative judge, explain the circumstances, and ask permission to exceed the 180 day limit.*"

*Id.* at 206, 657 A.2d 1158 (emphasis supplied).

The hearing judge agreed with the defendant's argument and dismissed all charges because of what he found to have been a violation of the *Hicks* Rule. The judge ruled

> that Md. Rule 4–271 had been violated because *the State, after Parker's arrest in mid-May, had not scheduled a trial date prior to the Hicks date or sought a good cause finding for scheduling a trial date thereafter.*

338 Md. at 206, 657 A.2d 1158 (emphasis supplied). In an unreported opinion, this Court affirmed that judgment of dismissal "based on the *scheduling* of the case by the prosecutor beyond the *Hicks* date without requesting a finding of good cause from the administrative judge." 338 Md. at 207, 657 A.2d 1158 (emphasis in original).

The Court of Appeals reversed both this Court and the hearing judge. It began its analysis by ascertaining the "critical postponement date." It found that to have been March 30, when the defendant failed to appear for trial. Notwithstanding the fact that seventy-four days remained before the 180–day marker would be passed, notwithstanding the fact that no mention was made as to whether that March 30 postponement might carry the trial beyond the 180th day, notwithstanding the fact that no discussion occurred with respect to rescheduling, and notwithstanding the fact that thirty-one days still remained within which to comply with the *Hicks* Rule even after the defendant was arrested on May 12, the Court of Appeals concluded that the indefinite postponement of March 30 was the critical one for purposes of a *Hicks* ruling:

> The critical postponement date in this case was March 30, the date on which the defendant failed to appear for trial. The indefinite postponement granted on that date carried the defendant's second trial date beyond the 180–day limit.

338 Md. at 210, 657 A.2d 1158.

Speaking for the Court, Judge Karwacki then made it clear that the issues of 1) good cause for the initial postponement and 2) arguably inordinate delay in subsequent rescheduling were separate and distinct questions, each calling for a separate and distinct analysis. In passing, the Court also placed its imprimatur on the fact that the Office of the State's Attorney was the assignment authority:

> Once the critical postponement date is ascertained, therefore, *we must apply a two-step analysis*. First, we must ask whether there was good cause for the postponement which occurred on the critical date, and then we must determine if there was inordinate delay between the time of the good cause postponement and the trial date set by *the assignment authority, in this case the Office of the State's Attorney*.

338 Md. at 210, 657 A.2d 1158 (emphasis supplied).

Not only were the acts of 1) postponing and 2) rescheduling deemed to be separate and distinct, they also were to be

evaluated according to different criteria. Judge Karwacki was very clear that it is only the act of postponing that requires "good cause":

> The error made by both the Court of Special Appeals and the circuit administrative judge was reading Rule 4–271 as requiring a specific good cause finding prior to *scheduling* of the case beyond the 180–day limit. *The scheduling of the case by the Office of the State's Attorney was not the action that required good cause—the March 30 postponement was.*

338 Md. at 210, 657 A.2d 1158 (first emphasis in original; second emphasis supplied).

■ The distinct administrative action of rescheduling a postponed case—whether done by a judge, by a Central Assignment Office, or by the State's Attorney's Office—does not call for a finding of good cause and does not call for a separate trip to an administrative judge or designee for prior approval, even when the act of rescheduling carries the trial date beyond the 180–day marker. All that is required to preclude a finding of a *Hicks* violation is that there had not "been an inordinate delay in scheduling the case for trial." 338 Md. at 211, 657 A.2d 1158.

The fact that the phenomena of 1) postponing and 2) rescheduling may be separate and distinct does not imply that they necessarily always will be. There may be occasions when the acts of postponing and rescheduling collapse into a single event. They may be so inextricably intertwined as not to permit separate analyses. When an attorney goes to an administrative judge or his designee, for instance, with or without opposition, and requests a clearly discretionary postponement, the feasibility of a reasonably timely rescheduling of the trial may be a decisive factor in whether the postponement should even be granted. Postponing and rescheduling in some circumstances will be a seamless totality.

There may be other occasions, however, as illustrated by *Rosenbach v. State* and *State v. Parker,* when the two phenomena are not at all intertwined and where each needs to be analyzed in a vacuum. The case now before us is one of them.

### The Rescheduling

█ As we turn our attention to the distinct issues of 1) postponing and 2) rescheduling on a one-by-one basis, we find it convenient to begin with the less problematic and then to proceed to the more problematic. The issue of whether there was any inordinate delay in the rescheduling process may not even be before us, for it appears that the hearing judge who granted the appellee's motion to dismiss the charges looked only to Judge Ahalt's decision of April 1 and to the fact that Judge Ahalt was neither the assignment judge nor the assignment judge's designee. In any event, the rescheduling of the trial in this case would not remotely pose any problem under the *Hicks* Rule.

Assuming, purely *arguendo*, that the decision made by Judge Ahalt on April 1, 1996, not to try the appellee *in absentia* was proper, the rescheduling of the case then became the responsibility of the Central Assignment Office of Prince George's County. Although Judge Ahalt did not consider and was not asked to consider whether his action of April 1 would have the necessary effect of carrying the trial beyond the 180–day marker, which loomed a bare sixteen days later on April 17, such an eventuality was a virtual certainty. Judge Ahalt, moreover, did not inject himself into the rescheduling process but appropriately left that to the Central Assignment Office. In both of those regards, *State v. Parker* is very clear:

[T]he judge granting that postponement need not be aware that it will cause the trial to occur beyond the 180–day limit and need not be involved in the rescheduling of the case[.]

338 Md. at 210, 657 A.2d 1158. *See also Rosenbach v. State,* 314 Md. at 478–79, 551 A.2d 460.

It was on May 30, two months after the postponement of April 1 and six weeks after the 180–day deadline of April 17 had passed, that the appellee was released from his Montgomery County detention and turned over to Prince George's County authorities. Within three days, the Central Assignment Office acted and rescheduled the trial for July 30. The

new trial date was sixty days after the appellee's return to Prince George's County.

In *Rosenbach v. State*, the critical postponement of a trial was made on August 26, 1987. The Central Assignment Office of Baltimore City rescheduled the trial for November 12, two-and-a-half months later. The rescheduled trial date was several weeks beyond the 180–day limit. After finding that there had been good cause for the initial postponement, the Court of Appeals turned its focus to the distinct issue of whether there had been any inordinate delay in the rescheduling of the case and held that there had not. Judge Adkins observed:

> Once that occurs, the question is no longer whether there was a postponement for good cause. *The issue then becomes the length of the delay.* A case postponed for good cause may yet run afoul of the statute and rule if, after a valid postponement, there is inordinate delay in bringing the case to trial.... But *the burden of showing that the postponement delay is inordinate*, in view of all the circumstances, *is on the defendant.* Rosenbach has not met that burden here; indeed, he has not attempted to do so.

314 Md. at 479, 551 A.2d 460 (citations omitted; emphasis supplied).

The rescheduling scenario in *State v. Parker* bears a striking resemblance to that in the present case. The March 30, 1993 postponement of a trial date in that case was made because, as in this case, the defendant was not present in the courtroom on the morning of the scheduled trial. In that case, as in this, a bench warrant was issued for the defendant. In that case, by contrast with the calendar in the present case, seventy-four days yet remained before the 180–day marker would be reached. The defendant there was not arrested until May 12. As of May 12, thirty days still remained within which to satisfy *Hicks's* 180–day rule. The State's Attorney's Office ultimately rescheduled the trial, however, for July 21, five weeks after the 180–day barrier had been passed and two

months after the defendant had been arrested on the bench warrant.

After first having found that there was good cause for the original postponement, the Court of Appeals turned its attention to the separate issue of whether there had been inordinate delay in the rescheduling. It held that there had not. Judge Karwacki observed:

[T]he only remaining question in applying the principles set forth above is that of inordinate delay.... The indefinite postponement was granted on March 30, but Parker was not arrested until mid-May.... *Little more than two months passed between Parker's second arrest and the new trial date. As a matter of law, we hold that the delay in this case between the time the defendant was arrested after his failure to appear for the initial trial date and the time of his ultimate trial date was not inordinate.* We need not remand the case for a hearing on this issue, as *we have upheld longer delays in previous cases. See Rosenbach, supra* (characterizing 78–day delay as insufficient to meet Rosenbach's burden of showing inordinate delay); *State v. Bonev,* 299 Md. 79, 472 A.2d 476 (1984) (delay in excess of three months not a clear abuse of discretion); *State v. Frazier, supra* (no inordinate delay where delays ranged from slightly under three months to almost four months).

338 Md. at 211, 657 A.2d 1158 (emphasis supplied). *See also State v. Cook,* 322 Md. 93, 98–101, 585 A.2d 833 (1991) (and cases cited therein); *State v. Harris,* 299 Md. 63, 67, 472 A.2d 467 (1984). If there is a problem in the present case, it must be found elsewhere.

### *Postponements: Deliberate vs. Coincidental*

■ We turn our attention to the decision of Judge Ahalt on April 1, 1996 not to require the appellee to be tried *in absentia.* We hold that that decision did not constitute a violation of the *Hicks* Rule. That holding is based on three alternative and independent rationales. We hold initially that

Judge Ahalt's decision of April 1 was not a "postponement" within the contemplation of the *Hicks* Rule.

■ There is a distinction, we believe, that should be made but has not yet been made between conscious requests for postponements and deliberate decisions to grant postponements, on the one hand, and other legal decisions that do not implicate "postponement policy" in any way, on the other hand, but which may, coincidentally, produce postponements.

The ever-escalating problem through the decade of the 1960's that produced Article 27, § 591 in 1971 and Maryland Rule 746 (now Rule 4–271) in 1977 was the alarming backlog of untried criminal cases. That problem, reaching virulent proportions in Baltimore City and the major metropolitan counties, was the direct result of scheduling pandemonium. Even as backlogs were building, criminal courtrooms were lying fallow because of the promiscuous requesting and granting of postponements.

In large, multi-judge jurisdictions, the random postponement decisions made by individual judges were frequently not made with any consistency from judge to judge or from case to case and reflected no coordinated policy. Lawyers would seek postponements because they had conflicts in scheduling, because they were not yet prepared to try a case, or simply to seek some tactical advantage. Sympathetic judges would frequently indulge attorneys whose only justification, with a wink and a universally-recognized code language, was that "Rule One" had not yet been satisfied. Some sort of drastic action was called for and what is now collectively referred to as the *Hicks* Rule was the result.

■ Thenceforth, the control of the criminal calendar would not be parcelled out among fifteen or twenty individualistic sources of judicial discretion but would be consolidated in the single authority of the administrative judge, the authority responsible for the state of the docket generally. The aim was a single and coordinated postponement policy. In *State v. Frazier*, 298 Md. 422, 453–54, 470 A.2d 1269 (1984), Judge

Eldridge thoroughly analyzed the rationale animating the decision to consolidate scheduling discretion in a single person:

The major safeguard contemplated by the statute and rule, for assuring that criminal trials are not needlessly postponed beyond the 180–day period, is the requirement that the administrative judge or his designee, rather than any judge, order the postponement. This is a logical safeguard, as it is the administrative judge who has an overall view of the court's business, who is responsible "for the administration of the court," who assigns trial judges, who "supervise[s] the assignment of actions for trial," who supervises the court personnel involved in the assignment of cases, and who receives reports from such personnel.

Consequently, the administrative judge is ordinarily in a much better position than another judge of the trial court, or an appellate court, to make the judgment as to whether good cause for the postponement of a criminal case exists. Moreover, with regard to. the extent of a postponement, even though the administrative judge may not personally select or approve the new trial date in a postponed case, such selection is made by personnel operating under his supervision and reporting to him. When he postpones a case, he is generally aware of the state of the docket in the future, the number of cases set for trial, and the normal time it will likely take before the case can be tried.

(Footnotes omitted).

■ The *Hicks* Rule thus mandated that the postponement policy for a county courthouse be in the exclusive control of the administrative judge (or his designee). It was meet and proper that such a policy was installed. What is obviously contemplated, however, is that the expertise, the knowledge as to the state of the docket, and the responsibility of the administrative judge will result in the wise and consistent exercise of discretion with respect to postponements. What is contemplated is the coordinated handling of the difficult situations and the requests by attorneys with respect to which the administrative judge can actually exercise discretion in one

direction or the other. The administrative judge may grant a requested postponement or he may not.

There may be rare situations, however, in which discretion is not involved or in which the knowledge and expertise of the administrative judge could contribute nothing to a decision. These may be situations when the issue of "postponement" is not the subject on the agenda, but when the fact of postponement might nonetheless be a coincidental consequence of a decision involving a different subject matter. The postponement policy of the jurisdiction would not even be implicated. Several hypotheticals may illustrate the point.

Hypothetical No. 1: Immediately prior to the commencement of a scheduled trial, the defendant stands up to exercise his election of trial by jury or trial by court. As he does so, he clutches his chest and falls prostrate to the floor with a massive heart attack. There is no discretion to be exercised. The problem before the court is not that of a "postponement," though a postponement will be the inevitable consequence. No judge who is not a robot would send the attorneys upstairs to seek out the administrative judge to see if the administrative judge would give the trial judge permission to permit the ambulance attendants to remove the defendant from the courtroom. Though a postponement of the trial, perhaps beyond the 180-day limit, would be the inevitable, albeit coincidental, consequence, postponement policy would simply not be involved and there would be no *Hicks* problem.

Hypothetical No. 2: As a scheduled trial is about to commence, the defense attorney stands up and informs the court that the defendant died the night before. The judge's response is, "Well, I obviously cannot try a corpse. I would dismiss the case, but I would like to have something more reliable than your secondhand account to go on. For today, I will postpone the case. As soon as you bring me a certified death certificate, I will order it to be dismissed." In the meantime, heroic medical measures have produced the miraculous survival of the defendant. His scheduled retrial may fall beyond the 180-day limit. The trial judge's initial decision,

however, was not a usurpation by him of the administrative judge's authority. Postponement policy was not in any way implicated and the issue before the court was not even contemplated as being a postponement problem.

The hypothetical situations are not that far removed from the situation actually before Judge Ahalt on April 1. We have not been provided a transcript of the colloquy before the judge that morning, but we have no indication that the attorneys were requesting a postponement or arguing the pros and cons of postponement. The issue advertently before the court was not whether a postponement should be granted, but whether the trial could proceed in the absence of the defendant. A postponement might be the inevitable consequence of a negative decision on a trial *in absentia*, but it was not the key issue before the court. It was simply a possible consequence of another decision on another issue.

Ordinarily, a trial may not be held in the absence of a defendant. *Porter v. State,* 289 Md. 349, 352–53, 424 A.2d 371 (1981); *Hughes v. State,* 288 Md. 216, 221–24, 421 A.2d 69 (1980); *Bunch v. State,* 281 Md. 680, 683–84, 381 A.2d 1142 (1978). A defendant who voluntarily fails to show up for a scheduled trial, however, may be deemed to have waived his right to be present and may, therefore, be tried *in absentia. Walker v. State,* 338 Md. 253, 658 A.2d 239 (1995); *Barnett v. State,* 307 Md. 194, 512 A.2d 1071 (1986).

In *Barnett v. State,* the trial judge exercised the option of requiring the defendant to be tried *in absentia.* Before doing so, however, he took judicial notice of events involving the defendant that had transpired in court the day before, received reports from defense counsel and others as to the defendant's probable intentions, had his law clerk check with twenty-nine area hospitals, and heard argument from counsel. He then made a finding of fact that the appellant had voluntarily absented himself from the trial. Had he ruled, on the other hand, that a trial *in absentia* was not appropriate, a postponement would have been the inevitable, albeit coincidental, consequence. There was no suggestion in the *Barnett*

opinion, however, that the trial judge should have "bumped" the decision upstairs to the administrative judge or that the administrative judge would have been the proper party to decide on the trial *in absentia.* It cannot be the law that had the *Barnett* judge decided other than as he did, it would suddenly, *ex post facto,* have become improper for him even to have presumed to make the decision.

In *Walker v. State,* 338 Md. 253, 658 A.2d 239 (1995), the trial judge exercised the option of requiring the defendant to be tried *in absentia.* Before doing so, however, she engaged in a colloquy with defense counsel and "found as a fact that the appellants had been notified of the trial date and location." 338 Md. at 256, 658 A.2d 239. She balanced "the slim probability that Walker and Lee could be located quickly" against "the burden on the State of severing and rescheduling such a complex case and recalling all the witnesses for a second trial." *Id.* Had she ruled otherwise, a postponement would have been the inevitable, albeit coincidental, consequence of her ruling. There was no suggestion in the *Walker* opinion, however, that the trial judge should have "bumped" her decision upstairs to the administrative judge or that the administrative judge would have been the proper party to decide on the trial *in absentia.* It cannot be the law that had the *Walker* judge decided other than as she did, it would suddenly, *ex post facto,* have become improper for her even to have presumed to make the decision.

Functionally, the issue before Judge Ahalt on April 1 was no different than the issue before the trial judges in the *Barnett* and *Walker* cases. He might have decided that when the appellee, with the advice of counsel, deliberately did an act the night before his scheduled trial that made it impossible for him to appear in the courtroom the next day, he voluntarily waived his right to be present and could, therefore, be tried in absentia. Unlike the trial judges in *Barnett* and *Walker,* Judge Ahalt did not require the appellee to be tried *in absentia.* He was no more involved in an advertent postponement decision, however, than were they. There was no more reason that his decision with respect to a trial *in absentia*

should have been "bumped" upstairs to the administrative judge than there was in the *Barnett* and *Walker* cases. There was no more reason here than in those cases why the administrative judge should have assumed the responsibility to rule on a trial *in absentia*.

■ That a trial judge properly ruled on whether a criminal trial should or should not proceed in the absence of a defendant simply does not involve in any way a jurisdiction's basic "postponement policy" or the fundamental *raison d être* for the *Hicks* Rule. A rigidly unthinking application of the rule where it was never intended to apply and when it could serve no possible purpose would be mindlessly counterproductive.

### *The Postponement Was Not Improper*

■ Even if, however, Judge Ahalt's decision not to force the appellee to be tried *in absentia* were to be categorized as an advertent "postponement" decision within the policy parameters of the *Hicks* Rule, we would still conclude, by way of an alternative holding, that the decision was not improper. In assessing its propriety, of course, we must look at two things: 1) the substantive merit of the decision itself and 2) the authority of the deciding judge to make such a decision.

■ In terms of the substantive merit of the decision, it was unassailable. "[I]t is patently obvious that unavailability of the defendant for trial constitutes good cause for a postponement." *State v. Parker*, 338 Md. 203, 210, 657 A.2d 1158 (1995). "The ... case obviously could not be tried on the November 5, 1981 trial date because of the absence of the defendants." *State v. Frazier*, 298 Md. 422, 462, 470 A.2d 1269 (1984). *See also State v. Hicks*, 285 Md. 310, 318–19, 403 A.2d 356 (1979) (The fact that the defendant was in a Delaware prison when his case was called for trial constituted not only "good cause" but "extraordinary cause" for a postponement.)

■ . On the merits, there remains the single question of whether a substantively unassailable decision will be deemed

fatally defective because the judge who made it was somehow acting *ultra vires.* Judge Ahalt, of course, was not acting in an *ultra vires* capacity in terms of any constitutional or statutory law. A circuit court judge is inherently empowered to postpone a case. The only question is whether Judge Ahalt was acting in an *ultra vires* capacity in terms of an administrative rule.

On that question, we find *Simms v. State,* 83 Md.App. 204, 574 A.2d 12 (1990), dispositive. In *Simms,* as here, the defendant failed to appear on the morning of his scheduled trial. In *Simms,* as here, the trial judge issued a bench warrant and postponed the case indefinitely. In *Simms,* the indefinite postponement was granted when nine days remained in *Hicks's* 180–day period; in this case, the indefinite postponement was granted when sixteen days remained in the 180–day period. In *Simms,* as here, the indefinite postponement had the practical effect of carrying the trial beyond the 180–day marker. In *Simms,* as here, the trial judge was neither the administrative judge nor his designee.

In *Simms,* as here, there was, in the substantive sense at least, good cause for the postponement. Speaking for this Court, Judge Rosalyn Bell observed:

> The State was prepared to go forward with the case on August 15, 1988 and "was prevented from doing so only by the constitutional prohibition against trying appellant *in absentia.*"

83 Md.App. at 209, 574 A.2d 12.

In *Simms,* as here, the primary thrust of the defense argument was that "a continuance from an administrative judge should have been sought." 83 Md.App. at 210, 574 A.2d 12. Judge Bell rejected that argument, concluding that, under the circumstances of the *Simms* case, the purpose and the policy of that aspect of the *Hicks* Rule would not be served by its application. She quoted at length, as we have done, from *State v. Frazier,* 298 Md. 422, 453–54, 470 A.2d 1269 (1984), in which the reasons for entrusting discretionary postponement

decisions to the administrative judge were thoroughly explained.

The trial judge in *Simms,* by contrast, had no discretion to exercise. He had, we concluded, no choice but to postpone the trial in the absence of the defendant. Under those circumstances, this Court concluded, "We see no 'expertise' that an administrative judge would have to offer in this situation." 83 Md.App. at 210, 574 A.2d 12. Even with respect to the subject of rescheduling, we concluded, "Such a procedure, generally required for postponements, would have no real value here, since a new date could not be set until appellant's whereabouts were known." *Id.*

The appellee seeks to distinguish this case from *Simms* by pointing out that in *Simms* the whereabouts of the missing defendant, at the time of the postponement, were unknown, whereas in this case the whereabouts of the missing defendant were known. He was in a Montgomery County detention facility. Under the circumstances of this case, however, that is a distinction without a difference. As we have fully explained above, we are not here analyzing the phenomenon of *rescheduling* a postponed trial nor the combined phenomenon of *postponing and rescheduling* as a totality. Under the bifurcated analysis sanctioned by *Rosenbach v. State* and *State v. Parker,* we are looking exclusively at the decision of April 1 to postpone the trial rather than to proceed to try the appellee in his absence.

With respect to rescheduling, were that the specimen being examined, knowledge of the whereabouts of the missing defendant *might* make some difference. With respect to the April 1 postponement itself, considered in a vacuum, knowledge of the whereabouts of the defendant would have been immaterial. The only thing that mattered was that the defendant was not in the Prince George's County courthouse. That was the critical fact that energized Judge Ahalt's decision. Wherever else he might have been, known or unknown, had no bearing on that decision. *Simms,* therefore, is apposite.

In this case, as in *Simms,* there was no discretion to be exercised. There was no special "expertise" or policy consideration or calendar overview that an administrative judge could have contributed. Save only for the option of trying the appellee *in absentia,* an option not to be exercised by the administrative judge in any event, Judge Ahalt had no choice but to do what he did. The administrative judge could have done nothing different. Under *Simms,* we see no error.

## The Appellee May Not Challenge the Postponement

■ For yet a third independent and alternative reason, we affirm the propriety of Judge Ahalt's April 1 decision not to go forward with the trial in the absence of the appellee and, therefore, find it necessary to reverse the decision of the Prince George's County Circuit Court to dismiss all charges against the appellee because of that court's belief that the *Hicks* Rule had been violated.

In *Farinholt v. State,* 299 Md. 32, 472 A.2d 452 (1984), a Prince George's County trial judge dismissed criminal charges against a defendant because of an alleged *Hicks* violation. This Court reversed that dismissal and the Court of Appeals affirmed our decision. With respect to a critical August 27, 1981 trial postponement, the Court of Appeals noted that the trial judge was not the county administrative judge and had not "been designated as the acting administrative judge during the period when he ... ordered a postponement." 299 Md. at 37–38 n. 2, 472 A.2d 452. The Court of Appeals nonetheless found it unnecessary to decide whether the postponement violated the *Hicks* Rule because the defendant was estopped from gaining any advantage from a situation which he had caused:

> We need not decide whether the postponement on October 27, 1981, complied with § 591 and Rule 746. *If it be assumed* arguendo *that the* October 27th *postponement violated the statute and rule,* either *on the theory that the postponement was not effected by the administrative judge or his designee,* or on the theory that good cause was

lacking, *the defendant could gain no advantage from such violation.*

299 Md. at 39, 472 A.2d 452 (emphasis supplied). *Farinholt v. State,* 299 Md. at 39–40, 472 A.2d 452, relied on the following passage from *State v. Hicks,* 285 Md. 310, 403 A.2d 356, *on motion for reconsideration,* 285 Md. 334, 335, 403 A.2d 368 (1979):

> "A ... circumstance where it is inappropriate to dismiss the criminal charges is where the defendant, either individually or by his attorney, *seeks or expressly consents* to a trial date in violation of Rule 746. It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation."

*See also State v. Frazier,* 298 Md. 422, 447 n. 17, 470 A.2d 1269 (1984); *Pennington v. State,* 299 Md. 23, 28, 472 A.2d 447 (1984); *State v. Cook,* 322 Md. 93, 97, 585 A.2d 833 (1991).

 A defendant will not be heard to complain about a trial date in excess of *Hicks's* 180–day limit if the defendant has brought about that trial date in either of two ways. The *Hicks* language, reiterated regularly in the subsequent case law, directs the inquiry to whether the defendant "seeks or expressly consents" to a trial date in violation of the rule. In looking at one-half of that dichotomy, *Goins v. State,* 293 Md. 97, 442 A.2d 550 (1982), pointed out that a defendant will not be barred from raising a *Hicks* challenge simply because the defendant acquiesced in or implicitly *consented* to a postponement. *Goins* stated clearly:

> At best, it might arguably constitute an *implied* consent to a postponement of the trial date, depending upon the circumstances. However, in order to avoid such doubts and controversies, *Hicks carefully limited this exception to the situation where the defendant seeks or expressly consents* to a trial date in violation of the rule.

293 Md. at 108, 442 A.2d 550 (emphasis in original; second emphasis supplied).

Significantly, the adverb "expressly" modifies, and thereby limits, the verb "consent" but it does not so modify and so limit the verb "seek." One may *seek* to bring about a particular result nonverbally as well as verbally, by one's actions as well as by one's words.

That being the case, we do not hesitate to hold that the appellee, by his deliberate actions, *sought* to bring about the necessary postponement of his scheduled April 1 trial. He only turned himself in to Montgomery County authorities the evening before trial after consulting with his attorney. We conclude that he was fully apprised of the necessary consequences that would flow from that action. Whether he deliberately *sought* to manipulate the system so as to cause a *Hicks* problem or whether he simply *sought* to avoid trial on April 1, the common denominator end that he *sought* was that he would not go to trial on that day.

In terms of the significance of not going to trial on April 1, we agree with the very astute observation made in *Pennington v. State*, 299 Md. 23, 28–29, 472 A.2d 447 (1984):

> [W]hen a defendant or his attorney, in the latter portion of the 180-day period, seeks the postponement of a previously assigned trial date, and the newly assigned trial date is beyond 180 days, it could reasonably be concluded that such defendant has sought a trial date in violation of the rule.

Whatever his motive, noble or ignoble, this appellee consciously and deliberately and with full advice of counsel *sought* to forfend his scheduled trial date of April 1. His was no mere verbal request which could have been denied. He, rather, created a situation where *the end he was seeking* was a guaranteed result. His calculated actions made the result inevitable. He may not now reap the reward of never having to answer for his crimes because the judge who was forced to deliver to him *the very result he sought* happened to be an ordinary judge rather than an administrative judge.

The decision of the Circuit Court for Prince George's County to dismiss all charges against the appellee for an alleged *Hicks* Rule violation is hereby reversed.

704

*JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.*