REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2412

September Term, 2014

_____

THEODORE SCOTT

v.

STATE OF MARYLAND

_____

Eyler, Deborah S.,
Wright,
Rodowsky, Lawrence F.
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Eyler, Deborah S., J.
_____

Filed:  October 26, 2016

In this case we must decide whether, when a mandatory enhanced sentence for a third crime of violence is vacated on appeal because the evidence was legally insufficient to support a finding that one of the prior convictions was for a crime of violence, double jeopardy bars the State from introducing new evidence at resentencing on remand to show that the same prior conviction was for a crime of violence. We hold that it does not. Our holding is at odds with the Court of Appeals decision in *Bowman v. State*, 314 Md. 725 (1989). As we shall explain, the holding in *Bowman* was based solely on an analysis of federal constitutional double jeopardy law that the United States Supreme Court has since rejected.

**FACTS AND PROCEEDINGS**

A jury in the Circuit Court for Prince George's County convicted Theodore Scott, the appellant, of attempted robbery with a deadly weapon, use of a handgun in the commission of a crime of violence, and conspiracy to commit robbery with a deadly weapon. Scott committed the crimes on December 24, 2011, at a convenience store in Mt. Rainier.

For Scott's attempted armed robbery conviction, the State sought a mandatory minimum sentence of 25 years, without parole, for a third crime of violence, under Md. Code (2002, 2012 Repl. Vol.), section 14-101(d) of the Criminal Law Article ("CL"). The two predicate convictions for crimes of violence were Scott's prior conviction for first degree assault in Maryland[1] and his prior conviction for aggravated assault in the Superior

---

[1] First degree assault is a crime of violence under Md. Code (2002, 2012 Repl. Vol.), section 14-101(a)(19) of the Criminal Law Article.

Court for the District of Columbia ("the D.C. conviction"). The D.C. conviction resulted from a guilty plea.

Under the D.C. aggravated assault statute, there are two modalities by which that crime may be committed. First, a person commits the crime if "(1) By any means, that person knowingly or purposely causes serious bodily injury to another person[.]" Second, a person commits the crime if "(2) Under circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury." D.C. Code 22-404.01(a)(1)–(2). The first modality of aggravated assault is virtually identical to the Maryland crime of first degree assault, which, as noted, is a "crime of violence" under CL section 14-101(a)(19). The second modality is similar to the Maryland crime of reckless endangerment, which is not a "crime of violence" under that statute.

At the sentencing hearing, the State introduced a certified copy of Scott's D.C. conviction. When defense counsel argued that the document was inadequate to prove the modality of the crime, and therefore that it was a crime of violence, the court postponed the sentencing hearing. At the reconvened sentencing hearing, the State introduced the statement of charges in the D.C. case. From that evidence, the sentencing court found that Scott's D.C. conviction was for a crime of violence and that his attempted armed robbery conviction was his third conviction for a crime of violence, under CL section 14-101(d). On that basis, it imposed the mandatory minimum sentence of 25 years' imprisonment, without parole, for attempted armed robbery. In addition, it sentenced Scott to 10 years,

with all but 5 years suspended, for use of a handgun, to be served consecutively to the sentence for attempted armed robbery, and 10 years, all but 5 years suspended, for conspiracy, to be served consecutively to the sentence for use of a handgun.

Scott noted an appeal to this Court in which he argued, among other things, that the State's evidence at sentencing was legally insufficient to prove that his D.C. conviction was for a crime of violence, as defined in CL section 14-101(a), and therefore to establish that his attempted armed robbery conviction was for a third crime of violence. We agreed and vacated the sentence for attempted armed robbery, explaining:

> [T]he transcript of the D.C. plea hearing was not produced at [Scott's] Maryland sentencing hearing. We are unable to tell "whether the statement of facts in support of the guilty plea tracked the Statement of Charges or whether other facts were subsequently developed or ignored for purposes of securing the plea."
>
> *       *       *
>
> Furthermore, the D.C. indictment alleged, in the alternative, conduct that the State concedes would have amounted to the Maryland crime of reckless endangerment, a crime not included as a "crime of violence" under C.L. § 14-101[a].
>
> In the absence of evidence of a clear judicial admission by [Scott], we are persuaded that the State failed to meet its burden of proving the necessary predicates to support imposition of the mandatory sentence on Count 1 [attempted armed robbery] in this case.

*Theodore Scott v. State of Maryland,* No. 2491, September Term, 2012 (filed September 3, 2014)*,* slip op. at 61. Citing Rule 8-604(d)(2), we remanded the case "for resentencing."

At the resentencing hearing on remand, the State again sought to have Scott sentenced to a mandatory term of 25 years' imprisonment, without parole, for attempted armed robbery, under CL section 14-101(d), based on the same two prior convictions. This

-3-

time, the State moved into evidence the transcript of the guilty plea hearing that led to

Scott's D.C. conviction. Scott objected, arguing that, having failed to introduce legally

sufficient evidence to prove that the D.C. conviction was for a crime of violence at the

original sentencing, the State was prohibited, by principles of double jeopardy, from

introducing evidence to prove the same thing on remand.

The sentencing court overruled Scott's objection and, based on the guilty plea

transcript, found that his D.C. conviction was for a crime of violence under CL section 14-

101(a) and imposed the mandatory sentence of 25 years' imprisonment, without parole, for

attempted armed robbery, under CL section 14-101(d). The court did not resentence Scott

on the use of a handgun and conspiracy convictions.

Scott noted this appeal, presenting four questions, which we have rephrased:

I.    Did the resentencing court violate his double jeopardy rights by imposing a mandatory twenty-five year sentence for attempted armed robbery, under CL section 14-101(d), based on prior convictions that included the D.C. conviction?

II.   Did the resentencing court exceed the scope of its authority under this Court's remand order?

III.  Did the resentencing court err by ruling the evidence legally sufficient to prove that the D.C. conviction was for a crime of violence?

IV.   Did the resentencing court err by refusing to consider making the sentences for use of a handgun and conspiracy concurrent with the mandatory twenty-five year sentence for attempted armed robbery?

For the following reasons, we shall affirm the judgments.

# DISCUSSION

## I.

### A. <u>Federal Constitutional Law of Double Jeopardy</u>

Because the evidence adduced at his original sentencing hearing was legally insufficient to prove that his D.C. conviction was for a crime of violence, Scott contends the State was barred by the Double Jeopardy Clause of the Fifth Amendment from introducing new evidence at resentencing to prove that the D.C. conviction was for a crime of violence. He relies primarily on *Bowman v. State*, 314 Md. 725 (1989).

The State responds that double jeopardy principles did not bar it from introducing the new evidence on resentencing because the evidence was being used to prove "sentencing factors," not to prove the elements of an offense. It relies on *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and *Monge v. California,* 524 U.S. 721 (1998), and argues that the precedential effect of *Bowman* must be re-evaluated in light of those Supreme Court cases.

The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend V. That right, applicable to the states through the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784 (1969), protects criminal defendants from successive prosecution for the same offense and cumulative punishment for the same offense. *Farrell v. State*, 364 Md. 499, 504 (2001); *see also Randall Book Corp. v. State,* 316 Md. 315, 323 (1989) ("The Double Jeopardy Clause of the Fifth Amendment protects against a second prosecution for

the same offense after acquittal, a second prosecution for the same offense after conviction and multiple punishments for the same offense.").

As long ago as *United States v. Ball*, 163 U.S. 662 (1896), the Supreme Court recognized that a defendant who successfully challenges his conviction for an offense on direct appeal can be retried for the same offense, without double jeopardy acting as a bar. *United States v. Tateo*, 377 U.S. 463, 465 (1964) (allowing retrial of an offense after conviction was reversed on collateral attack). In *Ball*, the reversal on appeal was for trial court error. As the Court later explained in *Burks v. United States*, 437 U.S. 1, 14–15 (1978), however, the cases that arose after *Ball* "generally do not distinguish between reversals due to trial error and those resulting from evidentiary insufficiency."

The *Burks* Court was presented with the question whether the Double Jeopardy Clause bars a retrial of a defendant for an offense after his conviction was reversed on appeal not for trial court error but for "the evidence [being] insufficient to sustain the verdict of the jury." *Id.* at 5 (footnote omitted). The defense argued that, for double jeopardy purposes, no rational distinction could be drawn between an acquittal by the trial court for legally insufficient evidence and a reversal by a reviewing court for legally insufficient evidence. In the former situation, a retrial for the offense plainly is prohibited because the defendant was acquitted. In the latter situation, the only trial court error was to have not granted a judgment of acquittal, and therefore a retrial also should be prohibited.

Recognizing that in some of its previous decisions it had permitted a retrial after a reversal for legally insufficient evidence, when the defendant had sought a new trial as one form of relief, the Court characterized its holdings in those cases as inconsistent and unclear

-6-

and rejected them, adopting the defense's argument. It gave the following rationale for allowing a retrial after reversal for trial court error:

> [The reversal] does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant had been convicted through a judicial process which is defective in some fundamental respect . . . . When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

*Burks*, 437 U.S. at 15. By contrast, "when a defendant's conviction has been overturned due to a failure of proof at trial . . . the prosecution cannot complain of prejudice for, it has been given one fair opportunity to offer whatever proof it could assemble." *Id.* at 16 (footnote omitted). The Court emphasized that a reversal for legally insufficient evidence "means that the government's case was so lacking that it should not have even been *submitted* to the jury." *Id.* (emphasis in original).

> Since we necessarily afford absolute finality to a jury's *verdict* of acquittal— no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

*Id.*

Ten years later, in *Lockhart v. Nelson*, 488 U.S. 33, 40 (1988), the question before the Supreme Court was whether a defendant could be retried after his conviction was reversed for trial court error in admitting evidence without which the evidence would have been legally insufficient to support the conviction. The Court characterized as the "general rule" the settled law that the Double Jeopardy Clause does not bar the retrial of a defendant for an offense after a reversal of a conviction of that offense for trial court error. *Lockhart*,

488 U.S. at 39. The Court explained that the *Burks* holding is an exception to that general rule: "*Burks* was based on the view that an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal[.]" *Id.*

In *Lockhart*, the defendant was convicted of burglary and theft and was given an enhanced sentence under a state habitual criminal statute. That statute required the state to prove, beyond a reasonable doubt, to a trier of fact (in his case a jury), that the defendant had a certain number of prior convictions (in his case, four). The state introduced evidence of four prior convictions and the jury imposed an enhanced sentence. During that proceeding, the defendant testified that he had been pardoned for one of his prior convictions, but then agreed that his sentence on that conviction merely had been commuted.

In a later habeas corpus proceeding, the defendant introduced evidence that he had in fact been pardoned for the conviction. The district court ruled that the enhanced sentence was invalid and further ruled that the Double Jeopardy Clause barred the government from using another fourth prior conviction to obtain an enhanced sentence.

After an affirmance by the Eighth Circuit Court of Appeals, 828 F.2d 446 (8th Cir. 1987), the Supreme Court took the case and reversed. It held that the *Burks* exception did not apply, because the case involved an error by the trial court in admitting the evidence of a conviction for which, as was later revealed, the defendant was pardoned. As admitted, the evidence was legally sufficient to support the jury's finding of four prior convictions. The Court held that the fact that the evidence would not have been legally sufficient to

-8-

support the jury's finding if the evidence that should not have been admitted had been excluded did not put the case within the *Burks* exception. Accordingly, a "retrial" on the habitual offender sentencing was permissible under the Double Jeopardy Clause. *Lockhart*, 488 U.S. at 42.

Such was the state of federal double jeopardy law in 1989, when the Court of Appeals decided *Bowman*. There, a jury found the defendant guilty of armed robbery and related crimes. The State sought a mandatory sentence of 25 years' imprisonment without parole for the armed robbery conviction, as a third crime of violence, under section 643B(c) of Article 27 of the Maryland Code, the predecessor statute to CL section 14-101(d). It relied upon two D.C. convictions for the predicate crimes of violence. The prosecutor and the sentencing judge were under the mistaken belief that the D.C. convictions both were for armed robbery. In fact, one was for armed robbery and the other was for robbery. In D.C., robbery is a statutory offense that can be committed a number of ways, some of which would be a crime of violence within the meaning of CL section 14-101(a) and others of which would not (for example, pickpocketing). Although the prior robbery conviction could have resulted from a modality of perpetration that was a crime of violence, there was no evidence introduced at sentencing to show that it was. The Court of Appeals concluded that the evidence presented at sentencing was legally insufficient to support a finding that the defendant had committed two prior crimes of violence, and therefore the trial court had erred by imposing the mandatory 25 year sentence without parole under section 643(c).

The Court then turned to the issue of resentencing. Reasoning that, for Fifth Amendment Double Jeopardy purposes, there is no distinction between a retrial of an offense and resentencing for a conviction, the Court stated:

> It is apparent that the case at hand does not fall within the holding of [*Lockhart*]. There was never evidence *erroneously* admitted legally sufficient to establish the necessary proof that Bowman was a subsequent offender within the contemplation of § 643B. The trial judge simply completely misinterpreted the evidence. Only one qualifying predicate conviction was shown and there was no competent evidence to establish the second. . . . *[T]he Burks exception to the general rule [as stated in Lockhart] is applicable*.

314 Md. at 740 (first emphasis in original). It held that the Double Jeopardy Clause prohibited the State "from attempting to resentence [the defendant] as a subsequent offender either on the basis that the District of Columbia robbery conviction in fact met the definition of a crime of violence under Maryland law or on the basis of another qualifying conviction not offered or admitted at the initial sentencing hearing." *Id.* at 740.[2]

_____

[2] Before the Court of Appeals decided *Bowman*, this Court on two occasions had held that, under *Burks*, federal double jeopardy principles prohibited the State from attempting to prove, on remand for resentencing, the existence of prior crimes of violence to support an enhanced sentence when the State's evidence in the original sentencing hearing was legally insufficient to support such a finding. In *Butler v. State*, 46 Md. App. 317 (1980), we vacated an enhanced sentence, imposed under section 643B(c), based on two prior convictions for crimes of violence, because one conviction was not final and the other conviction, for robbery in the District of Columbia, may have been for a crime of violence but the evidence at sentencing was insufficient to prove that it was. We held that federal double jeopardy principles protected the defendant from being "subjected to two hearings to determine an[] enhanced mandatory sentence under § 643B(c)[.]" *Id.* at 324. *See also Ford v. State*, 73 Md. App. 391 (1988) (relying upon *Butler* to hold that when the State failed to introduce any competent evidence of a prior weapons conviction to support an enhanced sentence for a subsequent weapons conviction, double jeopardy principles precluded the State from introducing evidence on remand to support imposition of the same enhanced sentence).

Scott argues that *Bowman* controls and cannot be distinguished from his case. He maintains that, under *Bowman*, the resentencing court violated his federal double jeopardy rights by sentencing him to a mandatory 25 year sentence without parole for a third crime of violence, based on newly introduced evidence that the D.C. conviction was for a crime of violence, when the evidence at the original sentencing hearing was legally insufficient to prove that the D.C. conviction was for a crime of violence.

The State responds that two Supreme Court cases decided in 1998, after *Bowman*, undercut that decision's foundation. In *Almendarez-Torres*, *supra*, the Supreme Court held that when the fact of a prior conviction is being used for sentence enhancement purposes, it is not an "element of [the] offense" or a separate crime; therefore, its existence need not be decided by a jury and proven beyond a reasonable doubt. 523 U.S. at 244. "To hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as 'go[ing] to the punishment only.'" *Id.* (citation omitted). The "prior commission of a serious crime—is as typical a sentencing factor as one might imagine." *Id.* at 230.

A few months later, the Supreme Court decided *Monge, supra*, which extended its holding in *Almendarez-Torres*, and is especially pertinent here. After the defendant was found guilty of three drug-related felonies, the government sought to have the court impose a statutory enhanced penalty based on his having committed a prior "serious felony." *Monge*, 524 U.S. at 724. The defendant's prior conviction was for assault and, under the enhanced penalty statute, an assault qualified as a "serious felony" "if the defendant either

inflicted great bodily injury on another person or personally used a dangerous or deadly weapon during the assault." *Id.* at 724–25.

At the sentencing hearing, the court considered the evidence relevant to whether the defendant's prior assault conviction was for a "serious felony" under the sentence enhancement statute and found that it was. It imposed an enhanced sentence. When the defendant challenged that finding on appeal, the government conceded that it had not introduced legally sufficient evidence to prove that the prior assault conviction was for a "serious felony." The government argued that on remand for resentencing it should have another opportunity to prove that the prior assault conviction was for a "serious felony."

Ultimately, the case reached the Supreme Court on the question of whether the Double Jeopardy Clause barred the government from having a second chance to prove that the prior assault conviction was for a "serious felony." The defendant argued that *Burks* controlled and prohibited the government from doing so. The government countered that *Burks* did not apply because failure of proof of a sentencing enhancement factor is not tantamount or even comparable to an acquittal. It maintained that only when the evidence of criminal liability *for an offense* was legally insufficient, which should have produced an acquittal, is a retrial prohibited by the Double Jeopardy Clause.

In a 5-to-4 decision, the Supreme Court held that, except in death penalty cases, for which it already had carved out an exception, the Double Jeopardy Clause does not apply to sentencing, and therefore on remand the government could attempt, a second time, to

-12-

prove that the defendant's prior assault conviction was for a "serious felony."[3]  The Court

reasoned that because a sentence enhancement is not part of the "offense," a second

decision on sentencing does "not place a defendant in jeopardy for an 'offense.'"  524 U.S.

at 728 (citations omitted).  Nor is a sentence enhancement an "additional punishment for

the previous offense; rather," it is an increased punishment "imposed on a persistent

offender."  *Id.*  It is not a "'new jeopardy or additional penalty for the earlier crimes' but .

. . 'a stiffened penalty for a latest crime[.]'"  *Id.* (quoting *Gryger v. Burke*, 334 U.S. 728,

732 (1948)).

Contrasting *Burks*, the Court explained that "[s]entencing decisions favorable to the

defendant . . . cannot generally be analogized to an acquittal[,]" as is the case when there

is "insufficient evidence of guilt[.]"  *Id.* at 729.

> The pronouncement of sentence simply does not "have the qualities of
> constitutional finality that attend an acquittal." *United States v. DiFrancesco,*
> 449 U.S. 117, 134, (1980); see also *Bullington, supra,* at 438 ("The
> imposition of a particular sentence usually is not regarded as an 'acquittal'
> of any more severe sentence that could have been imposed.").
>
> The Double Jeopardy Clause "does not provide the defendant with the right
> to know at any specific moment in time what the exact limit of his
> punishment will turn out to be." *DiFrancesco*, 449 U.S., at 137.
> Consequently, it is a "well-established part of our constitutional
> jurisprudence" that the guarantee against double jeopardy neither prevents
> the prosecution from seeking review of a sentence nor restricts the length of
> a sentence imposed upon retrial after a defendant's successful appeal. *See id*.,
> at 135; [*North Carolina v.*] *Pearce*, [395 U.S. 711,] 720 (1969); *see also*

---

[3] In *Bullington v. Missouri*, 451 U.S. 430 (1981), the Supreme Court held that the Double Jeopardy Clause barred a retrial of the penalty phase of a capital case, when the penalty phase was tried before a jury, in a process identical to a trial on criminal liability. The Court reasoned that in that circumstance, the jury's decision not to impose the death penalty bears the hallmarks of an acquittal.  The *Monge* Court maintained that exception.

-13-

> *Stroud v. United States*, 251 U.S. 15, 18 (1919)(despite a harsher sentence on retrial, the defendant was not "placed in second jeopardy within the meaning of the Constitution").

*Id.* at 729–30.

We return to the case at bar. The question is whether *Bowman* still controls the outcome of the Double Jeopardy Clause issue before us, given that its double jeopardy analysis later was rejected by the Supreme Court in *Monge* (except in death penalty cases).[4] As the State notes, other state appellate courts that once held that federal double jeopardy protections apply to sentencing enhancement proceedings have changed their positions under the authority of *Monge*. For example, in *People v. Porter*, 348 P.3d 922, 928 (Colo. 2015), the Supreme Court of Colorado overruled its holding in *People v. Quintana*, 634 P.2d 413 (Colo. 1981), that double jeopardy principles applied to recidivist sentencing laws, concluding, based on *Monge*, that there was "no sound reason for maintaining" that holding. *Id.* at 927. The court pointed out that recidivist sentencing statutes concern "'a *status rather than a substantive offense*.'" *Id.* at 928 (quoting *People ex rel. Faulk v. District Court*, 673 P.2d 998, 1000 (Colo. 1983) (emphasis in *Porter*)). "Thus, enhancing a penalty based on prior convictions does not put the defendant in jeopardy for an 'offense.'" *Id.* It observed that the recidivist sentencing phase of a trial "does not generate

---

[4] Scott asserts that *Almendarez-Torres* and *Monge* are no longer good law because the "writing is on the wall" that they will someday be overruled. He makes this prognostication based on *Apprendi v. New Jersey*, 530 U.S. 466, 521 (2000). Quite apart from the fact that we must take Supreme Court law as it is, not as it might become, we note that the *Apprendi* Court acknowledged the continued validity of *Monge* and *Almendarez-Torres* as applied to subsequent offender sentencing statutes. 530 U.S. at 488 n. 14.

the same concerns that drive protecting a defendant against double jeopardy at the substantive trial." *Id.* Furthermore, "when the prosecution fails to proffer evidence of prior convictions in a sentencing proceeding, the analogy to an acquittal is 'inapt.'. . . The pronouncement of sentence simply does not have the qualities of a constitutional finality that attend an acquittal." *Id.* (quoting *Monge*, 524 U.S. at 729).[5]

The holding in *Monge*, that the *Burks* exception does not bar the government from proving a sentencing enhancement on resentencing when its proof of the same sentencing enhancement in the original sentencing was not supported by legally sufficient evidence, is inconsistent with the holding in *Bowman*. On federal constitutional issues, we are bound by United States Supreme Court precedent. U.S.C.A. Const. Art. VI, cl. 2; *Baker, Whitfield*

---

[5] *See also Jaramillo v. State,* 823 N.E.2d 1187, 1188–90 (Ind. 2005) (overruling, based on *Monge*, *Bell v. State*, 622 N.E.2d 450, 456 (Ind. 1993), and other prior cases holding that double jeopardy bars retrial of habitual offender sentencing enhancements); *State v. Nelson,* 262 Neb. 896, 905 (2001) (holding, based on "the rationale of *Monge*," that double jeopardy principles do not apply to habitual criminal sentencing enhancement proceedings, overruling *State v. Gray*, 8 Neb. App. 973 (2000) (which had relied upon *Bowman*)); *State v. Eggleston,* 164 Wn.2d 61 (2008) (holding that, under *Monge,* double jeopardy does not prevent retrial of an aggravating factor for sentencing purposes), implicitly overruling *State v. Hennings*, 100 Wn.2d 379 (1983)); *Bell v. State*, 994 S.W.2d 173 (Tex. Crim. App. 1999) (overruling *Carter v. State*, 676 S.W.2d 353 (Tex. Crim. App. 1984), based on *Monge*). In addition, appellate courts addressing for the first time whether resentencing is governed by double jeopardy principles have held that it is not. *See State v. Collins,* 985 So.2d 985, 993 (Fla. 2008) (holding, based on *Monge,* that Florida's "Double Jeopardy Clause does not preclude granting the State a second opportunity to demonstrate that [the defendant] meets the criteria for habitualization"); *State v. McLellan,* 149 N.H. 237, 243 (2003) ("While we recognize that we have found New Hampshire's Double Jeopardy Clause to provide greater protection than its federal counterpart in certain circumstances . . . we are not persuaded that we should interpret the State Constitution differently than the Federal Constitution in this context.") (citation omitted); *Commonwealth v. Wilson,* 594 Pa. 106, 116 n.6 (2007) (holding that double jeopardy protections did not prevent the State from presenting evidence of youth/school sentencing enhancement when the original sentence was overturned on appeal).

-15-

*& Wilson v. State*, 15 Md. App. 73, 77–78 (1973) (citing *Wilson v. Turpin*, 5 Gill 56 (1847); *Howell v. State*, 3 Gill 14 (1845)). In the past, we have departed from a decision of the Court of Appeals when it was based on Supreme Court federal constitutional precedent that had been supplanted by more recent Supreme Court precedent to the contrary, when we expected that the Court of Appeals, if presented with an indistinguishable scenario, would do the same. For example, in *Morgan v. State*, 79 Md. App. 699, 703 (1989), we declined to follow *Allen v. State,* 183 Md. 603 (1944), in which the Court of Appeals held that a court order requiring the defendant to don a hat found near the crime scene in front of the jury amounted to compelled self-incrimination. We did so because in the intervening years the Supreme Court had decided *Schmerber v. California,* 384 U.S. 757 (1966), holding that an accused's compelled submission to a blood alcohol test did not violate his privilege against compelled self-incrimination, and *Allen* and *Schmerber* could not be reconciled.

In light of the Supreme Court's express rejection in *Monge* of the application of the *Burks* exception to resentencing under the Fifth Amendment Double Jeopardy Clause, in particular for sentencing enhancement findings, we conclude that in a case such as this, which presents a scenario that is not substantively distinguishable from *Bowman*, the Court of Appeals would depart from its resentencing holding in *Bowman* and follow *Monge*. Accordingly, federal double jeopardy principles did not bar the State from presenting new evidence, at resentencing, to prove that Scott's D.C. conviction was for a crime of violence, within the meaning of CL section 14-101(a)(19), and therefore was a proper predicate for the mandatory enhanced sentence under CL section 14-101(d).

## B. <u>Maryland Common Law of Double Jeopardy</u>

Although there is no guarantee against double jeopardy in the Maryland Constitution or Declaration of Rights, "Maryland common law provides well-established protections for individuals against being twice put in jeopardy." *State v. Long*, 405 Md. 527, 536 (2008) (citing *Taylor v. State*, 381 Md. 602, 610 (2004)).

Before the Supreme Court's 1969 decision in *Benton v. Maryland*, double jeopardy applied to Maryland prosecutions "only as a common law principle." *Cornish v. State*, 272 Md. 312, 316 n. 2 (1974). *Bowman* was decided on federal constitutional double jeopardy grounds alone; the opinion makes no reference to the Maryland common law of double jeopardy. Our examination of the common law of double jeopardy leads us to conclude that it also did not preclude the State from attempting to prove a second time, on resentencing on remand, that Scott's D.C. conviction was for a crime of violence, for purposes of sentence enhancement under CL section 14-101(a) and (d).

"Under the Maryland common law of double jeopardy, a defendant cannot be 'put in jeopardy again for the same offense—in jeopardy of being convicted of a crime for which he had been acquitted; in jeopardy of being twice convicted and punished for the same crime.'" *State v. Griffiths*, 338 Md. 485, 489 (1995) (quoting *Gianiny v. State*, 320 Md. 337, 347 (1990)). These principles derive from the English common law "pleas of former jeopardy (*autrefois acquit, autrefois convict*, and *pardon*)" that protect a defendant from being retried for an offense when he previously was acquitted, convicted, or pardoned for the same offense. *Ward v. State*, 290 Md. 76, 85 (1981) (emphasis in *Ward*). With some exceptions, the Maryland common law of double jeopardy also precludes multiple

sentences for the same offense. *Middleton v. State*, 318 Md. 749, 757 (1990) (additional citations omitted).

The plea in bar of *autrefois convict* (already convicted), which "generally means that 'where there had been a final [judgment] . . . of . . . conviction, . . . the defendant could not be a second time placed in jeopardy for the particular offense[,]'" *Middleton*, *supra*, at 756-57 (quoting *Hoffman v. State*, 20 Md. 425, 434 (1863)) (alterations in *Middleton*), is not relevant to the resentencing issue before us because resentencing did not expose Scott to the risk of being convicted twice for the offense of attempted armed robbery. Nor would the double jeopardy principle against multiple punishments for the same offense apply, as Scott's sentence for attempted armed robbery was vacated in the first appeal and on remand he simply was being resentenced for the same conviction. The only possibly relevant common law double jeopardy principle is *autrefois acquit*.

The plea in bar of *autrefois acquit* (already acquitted) protects a defendant who has been acquitted of an offense from being retried for the same offense. *Copsey v. State*, 67 Md. App. 223, 225–26  (1986) (stating that the plea of former acquittal is designed to prevent a defendant "who has once survived his initial jeopardy from being 'twice vexed' by a fresh exposure to the hazard of conviction for that same offense"). More than a century ago, the Court of Appeals explained:

> It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside[.]

*State v. Shields*, 49 Md. 301, 303 (1878).

As discussed, the *Bowman* decision was based on a parity of reasoning to *Burks*: Just as a failure of evidence necessary to prove an offense is tantamount to an acquittal, and therefore bars a retrial upon reversal, a failure of evidence to prove a prior conviction for a crime of violence, in order to support a mandatory enhanced sentence, is tantamount to an acquittal of that enhanced sentence, and therefore bars resentencing based on the same (or even an additional new) prior conviction. The Supreme Court rejected that analogy in *Monge*. The question is whether the common law principle of *autrefois acquit* supports it. It does not.

The Court of Appeals has recognized that a ruling by a trial court that is not an outright acquittal can be the functional equivalent of an acquittal under *autrefois acquit*. In *State v. Taylor*, 371 Md. 617 (2002), the Court held in two consolidated cases that erroneous trial court rulings were tantamount to acquittals. The defendant in *Taylor* filed a motion to dismiss the information charging him with a statutory crime, and in granting the motion, the trial court ruled that the conduct alleged in the information was not prohibited by the statute. The State noted an appeal. In *Bledsoe v. State*, after the charges against the defendant were dismissed by the District Court, the State appealed to the circuit court, which reinstated the charges and remanded the case to the District Court for trial. The defendant appealed.

The Court of Appeals held that the trial courts in both cases erred by granting the motions to dismiss, but the rulings "were the equivalent of granting acquittals," under the common law principle of *autrefois acquit*, and therefore had to "be treated as such for jeopardy purposes." 371 Md. at 654. It dismissed the appeal in *Taylor* because *autrefois*

*acquit* barred the State from appealing from an acquittal, or its equivalent; and it reversed the judgment in *Bledsoe*, because *autrefois acquit* barred the State from prosecuting the defendant when he had been granted the equivalent of an acquittal.

A few years later, in *Giddins v. State*, 393 Md. 1 (2006), the Court once again was faced with a disposition by the trial court that the defendant contended was tantamount to an acquittal. The defendant was charged with two counts of possession of controlled dangerous substances with intent to distribute. The drugs were found in his residence. After the trial court ruled that the officers who had obtained the search warrant for the defendant's residence could not testify about the evidence on which they had based their warrant application, the prosecutor asked one of them to identify the "target of that investigation." 393 Md. at 11. The defense moved for a mistrial. The judge granted the motion, explaining that he was doing so because by asking that question the prosecutor was bringing to the fore all the evidence in the search warrant application, none of which would be admissible.[6]

When the State sought to retry the defendant, he moved to dismiss. Raising the common law plea in bar of *autrefois acquit*, he argued that the trial judge's remarks in granting the mistrial were a rejection of critical evidence against him and therefore amounted to an acquittal. The court denied the motion, and the defendant noted an immediate appeal. Eventually, the case came before the Court of Appeals.

_____

[6] The defense maintained that the prosecution had engaged in misconduct by asking the question in order to goad the defense into moving for a mistrial. A hearing before another judge was held on the issue of prosecutorial misconduct, and that judge found that the prosecutor had not engaged in misconduct.

-20-

The Court observed that "[i]n determining whether the defendant can successfully plead autrefois acquit, the essential inquiry is whether there has been a ruling on the evidence[.]" *Id.*, at 20. Using the consolidated cases in *State v. Taylor* as examples, it explained that "where the trial judge has taken action based upon the evidence, that action, despite its characterization, constitutes an acquittal for double jeopardy purposes." *Id.* at 22. The Court held that the trial judge's comments about the evidence underlying the search warrant were not a substantive ruling on the evidence, however. They were observations about the admissibility, or more precisely, the inadmissibility, of that evidence. Accordingly, the mistrial motion ruling was not the functional equivalent of an acquittal, and a second prosecution for the same offense was not barred by *autrefois acquit*.

The rulings in question in *State v. Taylor* and *Giddins* all concerned criminal liability for the offenses the defendants were being tried for—not sentence impositions. That is the context in which the Court analyzed whether a ruling that is not expressly an acquittal may be equivalent to one. This is not surprising because, as noted, the plea in bar of *autrefois acquit* applies to a *verdict* of acquittal, or the equivalent of a *verdict* of acquittal, *i.e.*, an acquittal *of the offense* for which the defendant is on trial. *See Pugh v. State*, 271 Md. 701, 705 (1974) (observing with respect to the common law principle of *autrefois acquit*, "[f]rom the earliest days, it has been clear that *once a verdict of not guilty has been rendered at the conclusion of a criminal trial, that verdict is final and cannot be set aside*.") (emphasis added)).

The common law plea of *autrefois acquit* is designed to protect a defendant against criminal liability for the "same offense" for which he was acquitted, a protection later

-21-

incorporated in the Fifth Amendment Double Jeopardy Clause. Indeed, the Fifth Amendment double jeopardy protections embody several common law pleas, including *autrefois convict* and *autrefois acquit*. *See Ex Parte Lange*, 85 U.S. 163, 168–69 (1873); *Hoffman v. State*, 20 Md. 425, 432 (1863) ("[A]lthough handed down by common law for centuries . . . it was thought proper to embody it in the Constitutions of several of the States, and engraft [double jeopardy], by way of amendment, on that of the United States.").

Although the Maryland common law of double jeopardy is not coextensive with the Fifth Amendment Double Jeopardy Clause in every way,[7] the Maryland appellate courts never have interpreted *autrefois acquit* to extend beyond an acquittal of an offense (or a functional equivalent of an acquittal of an offense) to the sentencing for a conviction of an offense. For the same reason the *Monge* Court held that, under the Fifth Amendment Double Jeopardy Clause, a failure of proof on sentencing is not an "acquittal" of the sentence imposed or any greater sentence, a failure of proof on sentencing is also not an acquittal (or the functional equivalent of an acquittal) of the sentence that was imposed or any greater sentence under the principle of *autrefois acquit*. One of the bases for *Monge* was *North Carolina v. Pearce,* 395 U.S. 711 (1969), in which the Supreme Court explained:

> [T]he guarantee against double jeopardy imposes no restrictions upon the
> length of a sentence imposed upon reconviction. . . . [A] corollary of the

---

[7] *See e.g., Fields v. State*, 96 Md. App. 722, 728–729 (1993), explaining that under common law double jeopardy principles, as followed in Maryland, jeopardy does not attach until the verdict is rendered; but the Supreme Court, in interpreting the Double Jeopardy Clause, has altered the time of attachment to when the jurors are sworn.

> power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction.

395 U.S. at 719–720 (footnote omitted).[8] *See also Stroud v. United States*, 251 U.S. 15 (1919) (upholding against a double jeopardy challenge the defendant's death sentence for murder on retrial after his original murder conviction, for which he had been sentenced to life in prison, was reversed on appeal). The principle of *autrefois acquit* in the common law and as incorporated in the Fifth Amendment does not effectively "acquit" the defendant of a greater sentence on resentencing.[9]

On resentencing on remand, the State was not barred by the Maryland common law of double jeopardy from presenting additional information to prove that Scott's D.C.

---

[8] In *Pearce*, and as later refined in *Texas v. McCullough*, 475 U.S. 134 (1986), and *Alabama v. Smith*, 490 U.S. 794 (1989), the Supreme Court held that when a defendant's trial conviction is reversed and he is retried and found guilty of the same offense, it is a violation of his due process right for the court to impose *for a vindictive purpose* a greater sentence than originally was imposed. "[V]indictiveness is not to be presumed from the imposition of a more severe sentence on remand following the defendant's successful appeal." *Twigg v. State*, 447 Md. 1, 23 (2016).

[9] In Maryland, what remains of the *Pearce* doctrine is codified at Maryland Code (1974, 2013 Repl. Vol.), § 12-702(b) of the Courts and Judicial Proceedings Article. *Twigg*, 447 Md. at 23. That statute provides that "[i]f an appellate court remands a criminal case to a lower court in order that the lower court may pronounce the proper judgment or sentence . . . the lower court may impose any sentence authorized by law to be imposed for the offense." It may not impose a more serious sentence than originally imposed unless "(1) The reasons for the increased sentence affirmatively appear; (2) The reasons are based upon additional objective information concerning identifiable conduct on the part of the defendant; and (3) The factual data upon which the increased sentence is based appears as part of the record."

conviction was for a crime of violence, in an effort to have the court impose the mandatory enhanced sentence under CL section 14-101(d).

### C. <u>Collateral Estoppel Form of Double Jeopardy</u>

Scott also argues that the collateral estoppel form of double jeopardy, first recognized by the United States Supreme Court in *Ashe v. Swenson*, 397 U.S. 436, 445 (1970), barred the State from relitigating the issue whether his D.C. conviction was for a crime of violence.[10] The State responds that the collateral estoppel form of double jeopardy does not apply here.

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. "If the fact previously litigated is a key component in later offenses, then a subsequent finding in favor of the defendant in the first trial naturally will compel an acquittal in the latter trial." *Long*, 405 Md. at 539.

In *Ashe*, six men playing poker in one room were robbed by several masked men. Soon thereafter, four armed men, including Ashe, were arrested and charged. Ashe was tried in a Missouri state court for the armed robbery of one of the poker players. The testimony of the state's witnesses was extremely weak on criminal agency, and the jury acquitted him. The state then convened a new jury and tried Ashe for the armed robbery of one of the other poker players. At that trial, the same state's witnesses gave stronger testimony on criminal agency, and Ashe was convicted.

---

[10] The Court of Appeals has recognized the collateral estoppel form of double jeopardy as part of the Maryland common law of double jeopardy. *Long*, 405 Md. at 538.

The case came before the Supreme Court on the denial of a petition for writ of habeas corpus. The Court reversed. It held that the doctrine of collateral estoppel as recognized in federal criminal law "is embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe*, 397 U.S. at 445. "Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that [Ashe] was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of" either the same victim *or* any of the other five victims. *Id.* at 446. "For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers." *Id.*

Scott does not cite any case holding that the collateral estoppel form of double jeopardy would apply to resentencing, and he acknowledges that the one case he cites does not support his position. In *Simms v. State*, 83 Md. App. 204 (1990), the trial court sentenced the defendant to a mandatory term of life in prison without parole for daytime housebreaking, under section 643B(b) of former Article 27, based on his having committed three prior crimes of violence, including a 1970 conviction. In another case against the defendant that was tried shortly before his trial in the case on appeal, he was found guilty in another county of another offense. The sentencing judge in that case ruled that the State's evidence about the 1970 conviction was insufficient to support a finding that it was for a crime of violence, for purposes of statutory sentence enhancement.

On appeal, the defendant argued that the collateral estoppel form of double jeopardy precluded the sentencing judge from finding that the 1970 conviction was for a crime of violence because that issue had been finally decided to the contrary in the prior case. We

-25-

disagreed, stating that "the *issue* of the sufficiency of the State's evidence of a predicate offense in support of enhanced punishment" was not, as the defendant was arguing, a "valid and final judgment[.]" *Id.* at 213–14 (emphasis in original). We noted that the defendant's position was inconsistent with the Court of Appeals holding in *State v. Tichnell*, 306 Md. 428 (1986), that the sentencing jury in a capital case was not collaterally estopped to find fewer mitigating circumstances than those found by a previous sentencing jury in the same case. *See also Johnson v. State*, 303 Md. 487, 519–22 (1985) (same). It also was inconsistent with the Supreme Court's holding in *Poland v. Arizona*, 476 U.S. 147 (1986), that the trial judge's rejection of a particular aggravating circumstance in a death penalty case did not amount to a death penalty "acquittal" for purposes of double jeopardy.

The collateral estoppel form of double jeopardy has no application here. First, it is clear from the holding in *Ashe* that collateral estoppel applies when there has been a factual finding favorable to the defendant that is central to his criminal liability for an offense. The doctrine has never been extended to apply to sentencing. Second, even if it applied to sentencing, the original sentencing court in this case found on the evidence submitted that the D.C. conviction was for a crime of violence, and on appeal this Court found that the evidence before the sentencing court was not sufficient to support that finding. There was no "final adjudication" by a court that, *as a matter of fact*, the D.C. conviction was *not* for a crime of violence. The collateral estoppel form of double jeopardy did not prohibit the State from proving Scott's prior conviction at resentencing.

## II.

## Court's Authority on Remand

Scott contends the resentencing court exceeded the scope of its authority on remand, in violation of Rule 8-604(d)(2) and our opinion and mandate in his prior appeal, by considering the guilty plea transcript of his D.C. conviction.

Rule 8-604(d)(2) provides that, "[i]n a criminal case, if the appellate court reverses the judgment for error in the sentence or sentencing proceeding, the Court shall remand the case for resentencing." Scott argues that *Southern v. State*, 371 Md. 93 (2002), supports the proposition that this rule does not permit a remand for the purpose of introducing new evidence at resentencing. *Southern* is inapposite. It did not concern resentencing under Rule 8-604(d)(2), and indeed did not concern sentencing at all. Rather, the issue there was whether, when the State failed to meet its burden to prove that the initial stop of the defendant was constitutional, but the trial court denied the defendant's motion to suppress evidence obtained by virtue of the stop, this Court could dispose of the defendant's appeal by a limited remand, under Rule 8-604(d)(1), for a new suppression hearing at which the State could introduce additional evidence that the stop was constitutional.

The Court of Appeals held that we could not. The limited remand rule "does not afford parties who fail to meet their burdens on issues raised in a completed suppression hearing an opportunity to reopen the suppression proceeding for the taking of additional evidence after the appellate court has held the party has failed to meet its evidentiary burden." *Southern*, 371 Md. at 105. This holding has no effect upon an appellate court's authority to remand a criminal case for resentencing, under Rule 8-604(d)(2).

-27-

In our opinion in Scott's first appeal, we stated:

> In the absence of evidence of a clear judicial admission by [Scott], we are persuaded that the State failed to meet its burden of proving the necessary predicates to support imposition of the mandatory sentence on Count 1 in this case. Accordingly, we shall vacate the sentence on Count 1 and remand this case for resentencing. See Md. Rule 8-604(d)(2). . . .

*Scott*, slip op. at 61. The mandate read:

> SENTENCE ON COUNT 1 VACATED AND THE CASE IS REMANDED FOR RESENTENCING. ALL JUDGMENTS OTHERWISE AFFIRMED.

Scott argues that our opinion and mandate did not permit the State to introduce additional evidence at resentencing because we would have said so if that was our intention and because, under *Temoney v. State,* 290 Md. 251, 260 (1981), unless an appellate court's mandate expressly permits additional evidence to be taken on remand, that is prohibited.

The absence of any statement in our opinion as to whether new evidence could be introduced on resentencing does not suggest that we were prohibiting any such evidence. Moreover, *Temoney* is inapposite. There, the sentencing court refused to decide whether evidence of prior convictions supported the imposition of a mandatory sentence. The Court of Appeals upheld the sentence imposed, even though the sentencing judge should have considered the evidence before it, because, by the sentencing court's own analysis, the evidence was not legally sufficient to support imposition of the mandatory sentence. The Court did not decide whether, under *Burks*, additional evidence could be introduced on resentencing (the issue later decided in *Bowman*), because the State did not propose to introduce additional evidence on resentencing.

Here, the issue of the introduction of new evidence at resentencing is squarely before this Court. As we already have held, the introduction of new evidence does not violate double jeopardy protections.

**III.**

**Sufficiency of the Evidence that the D.C. Conviction was for a Crime of Violence**

Scott contends the evidence at resentencing on remand was legally insufficient to prove that his prior D.C. conviction for aggravated assault was for a crime of violence, under CL section 14-101(a).

The transcript of the guilty plea hearing in D.C. Superior Court on the offense of aggravated assault shows that the government proffered that Scott and two other men (Calvin Mason and Jeffrey Mason) got into a dispute with the victim over a North Face jacket. They surrounded the victim and the following events took place:

> At this point the [victim] retreated to a wall, and was covering his face in order to avoid being hit in the face and body by [Scott] and Calvin Mason. [Scott] and Calvin Mason continued to hit the [victim] until the [victim] fell to the ground, at which point Jeffrey Mason told [Calvin] Mason to stomp on the [victim].
>
> Calvin Mason and [Scott] then began to stomp on the [victim's] face and body while [Scott] was wearing boots.
>
> [A]t approximately this point the [victim] lost consciousness and began to suffer bruising, subdural bleeding and a fracture of the left orbital bone, the bone surrounding the eye.

At the conclusion of this proffer, the judge asked Scott, "So, . . . that's the evidence the Government had in your case. Do you agree or disagree, sir?" Scott replied, "I agree."

At the resentencing hearing on remand, the court observed that "[s]tomping somebody around the face and the eye with boots on while he's on the ground obviously is an intent, obviously expresses an intent to cause serious bodily harm. I mean that's the whole purpose of doing it." The court found that the facts proffered by the government and accepted by Scott in support of the aggravated assault guilty plea would support a conviction for first degree assault, under CL section 3-202, and therefore the aggravated assault was a crime of violence under CL section 14-101(a)(19).

Scott argues that because he did not admit at the plea hearing that he had the intent to cause serious physical injury, the evidence was insufficient to establish the elements of the offense of first degree assault. He relies on *Bowman.* There, despite efforts by the prosecutor on cross-examination, Bowman refused to admit that he had committed robbery with a deadly weapon, which would have qualified the D.C. robbery offense as a crime of violence under the Maryland predecessor statute to CL section 14-101.

The State points out that here, in contrast to *Bowman*, Scott agreed to facts proffered by the government that would constitute a crime of violence under CL section 14-101(a)(19). It maintains that Scott's agreement, without reservation, to these facts was sufficient for the sentencing court to infer that he had an intent to cause serious physical injury.

A factfinder "may infer the necessary intent from an individual's conduct and the surrounding circumstances[.]" *Chilcoat v. State*, 155 Md. App. 394, 403 (2004). *See also In re Lavar D.*, 189 Md. App. 526, 590 (2009) (holding that the court, as the factfinder, was permitted to draw the inference that a group of juveniles intended to inflict serious

-30-

physical injury by repeatedly hitting, punching, and kicking the victim). As such, the facts underlying Scott's D.C. conviction for aggravated assault, as agreed to by Scott, offered sufficient evidence to establish that that conviction was for a "crime of violence" under CL section 14-101(a)(19), so as to trigger the mandatory enhanced sentencing provision of CL section 14-101(d).

## IV.

### Resentencing on Counts 5 and 7

As noted above, at the original sentencing the court imposed a 10 year sentence, with all but 5 years suspended, for use of a handgun (Count 5), to be served consecutively to the 25 years without parole sentence for attempted armed robbery (Count 1); and a 10 year sentence, with all but 5 years suspended, for conspiracy (Count 7), to be served consecutively to the sentence for Count 5 and Count 1. This Court vacated the sentence for attempted armed robbery (Count 1). We otherwise affirmed the judgments, *i.e.,* the convictions and sentences on Counts 5 and 7.

At the resentencing hearing on remand, counsel for the parties argued as follows regarding the sentences for Counts 5 and 7:

> [PROSECUTOR]: Your Honor, just before you hear from the defendant, Counts 5 and 7 can't – those aren't here for re-sentencing, so those cannot be changed. I think that the only thing that you can sentence on is the 25 mandatory without parole [Count 1].
>
> The reason I brought the Count 5 up was because that was, in fact, consecutive. We're not here to change that sentence. I just wanted to make sure that was on the record because those two counts – those two sentences that the Court issued remain the same, so the only thing that we're here for is Count 1.

[DEFENSE COUNSEL]: The Court is here sentencing – *the Court can make Count 1 consecutive or concurrent to the already existing sentences.*

[PROSECUTOR]: But those sentences, Count 5 actually says –

[THE COURT]: The problem is, is that I didn't make Count 1 consecutive to the other sentences. I made the gun charge [Count 5] consecutive. And so if I did have the discretion to make this concurrent, that would change, in effect, the sentence on the other counts, which are not before the Court.

[DEFENSE COUNSEL]: At the moment they're consecutive to a sentence that doesn't exist. *So the Court does have the power to make Count 1, which you're sentencing on, concurrent to all other sentences which already exist in this case, and that's what we ask the Court to do.*

[THE COURT]: All right. Well, I disagree with you, [defense counsel], but I'll hear from [Scott] as to how he feels or what he wants to say at this point.

[DEFENSE COUNSEL]: Given the Court's rulings, the fact that the Court is ruling it has essentially no discretion in the sentence it's going to impose, [Scott] has nothing to add.

[THE COURT]: All right. Very well.

(Emphasis added.)  The court imposed the mandatory 25 years without parole sentence on Count 1.  The consecutive sentences on Counts 5 and 7 remained.

Scott's final contention is that, on resentencing, the court erred by "refus[ing] to consider making the sentences under Counts 5 and 7 run concurrently with the mandatory sentence under Count 1" and that its doing so "was effectively a refusal to consider [his] allocution and evidence in mitigation."  He relies upon Rule 4-342(f), which states that "[b]efore imposing sentence, the court shall afford the defendant the opportunity, personally and through counsel, to make a statement and to present information in mitigation of punishment[,]" and *Jones v. State*, 414 Md. 686 (2010), which holds that a defendant has a right of allocution at resentencing.  He also maintains that *Bowman*

supports his position that the resentencing judge had discretion to revise the sentences on Counts 5 and 7.

The State responds that we should not address Scott's allocution argument because he waived allocution, and we should not address his argument that the court should have exercised discretion to make the sentences for Counts 5 and 7 concurrent with the sentence for Count 1 because it is not preserved, as it is not the argument he made below. Alternatively, the State argues that the resentencing court did not have the authority to make the sentences on Counts 5 and 7 concurrent with the reimposed sentence on Count 1.

In his reply brief, Scott asserts that the recent decision in *Twigg v. State*, 447 Md. 1 (2016), supports his position.

We find merit in the State's waiver and preservation arguments. The record discloses that the resentencing judge expressly recognized that Scott had the right to allocution and gave him the opportunity to allocute and present mitigating information. Through counsel, Scott declined, thereby waiving any right to complain on appeal that the court violated Rule 4-342(f).

The record also discloses that the argument Scott made below about the sentences on Counts 5 and 7 is not the argument he is advancing on appeal. At resentencing, Scott's counsel asked the judge to make the sentence it was imposing on Count 1, *i.e.*, the mandatory 25 years' imprisonment without parole, concurrent with the sentences previously imposed on Counts 5 and 7. The judge declined to do so on the ground that the effect would be to alter the sentences on Counts 5 and 7, which had been imposed consecutive to Count 1 (for Count 5) and consecutive to Count 5 (for Count 7). The judge

was of the view that because this Court had not vacated the sentences on Counts 5 and 7, he could not alter them. Defense counsel argued that doing so would not alter those sentences because the sentence on Count 1 no longer existed, having been vacated on appeal, and therefore there was no sentence for the sentences on Counts 5 and 7 to run consecutively to.[11]

On appeal, Scott mischaracterizes his request of the resentencing judge, stating that he asked him to reconsider the sentences on Counts 5 and 7 to make *them* run concurrently with the newly imposed sentence on Count 1, but the judge refused. That plainly is not what happened below.

Even if the issue whether the resentencing court had the authority to reconsider the sentences imposed on Counts 5 and 7 to make them run concurrently with the newly imposed sentence on Count 1 were properly preserved, we would not find merit in it. The cases Scott relies upon—*Jones*, *Bowman*, and *Twigg*—are inapposite.

In *Jones*, the defendant was convicted of first degree assault and robbery with a deadly weapon. This Court vacated both sentences on the ground that the convictions should have merged for sentencing, and remanded for resentencing. The trial court did not allow the defendant to allocute and present mitigating evidence on resentencing. The case reached the Court of Appeals, which held that on resentencing the defendant had a right to allocution and present mitigating evidence. *Jones* did not concern a situation in which the defendant was seeking to have sentences that had not been vacated reconsidered.

---

[11] This could not be accurate as to Count 7, which was imposed to run consecutively to the sentence on Count 5.

In *Bowman*, after holding that the mandatory 25 year sentence without parole was not supported by sufficient evidence and the State could not offer otherwise sufficient evidence on resentencing, the Court of Appeals vacated that sentence *and* two sentences that had been imposed to run consecutively to it and directed that on remand there be resentencing on all those convictions. In the case at bar, this Court did not vacate the sentences on Counts 5 and 7. We only vacated the sentence on Count 1 and remanded for resentencing on that count alone.

Finally, *Twigg* does not lend support to Scott's contention. In that case, the defendant was convicted of child sexual abuse and three sex offenses (second degree rape, third degree sexual offense, and incest), "any one of [which] could have provided the basis for the child abuse conviction." *Twigg*, 447 Md. at 5. The trial court sentenced him to consecutive terms of 20 years for second degree rape, 10 years for third degree sexual offense, and 10 years for incest. It imposed a 15 year sentence for child sexual abuse and suspended all of it in favor of 5 years' probation.

On appeal to this Court, the defendant maintained that, under *Blockburger v. United States*, 284 U.S. 299 (1932), he was entitled to have the convictions "and/or" sentences for the three sexual offenses vacated because they were lesser included offenses of the crime of child sexual abuse. *Twigg v. State*, 219 Md. App. 259, 266 (2014). We held that the three sex offense convictions had to be vacated, and we also vacated the sentence for the child sexual abuse and remanded for resentencing on that conviction.

The Court of Appeals took the case on *certiorari*. It held that only one sexual offense conviction would be the necessary predicate for the child sexual abuse conviction,

-35-

and because the verdict did not specify which one, it would be the one carrying the greatest sentence. It further held that resentencing on the child sexual abuse conviction would not violate the Double Jeopardy Clause because "'the pronouncement of sentence has never carried the finality that attaches to an acquittal,'" *Twigg*, 447 Md. at 21 (quoting *United States v. DiFrancesco*, 449 U.S. 117, 133 (1980)); "resentencing following an appeal does not subject the defendant to 'multiple' sentences," *id.* (quoting *DiFrancesco*, 449 U.S. at 138–39); and the Supreme Court in *Pearce* made plain that the Double Jeopardy Clause "does not bar the imposition of a longer sentence after a retrial and reconviction than was imposed in the original vacated proceeding." *Id.*

The Court further rejected the defendant's argument that allowing the trial court to resentence him to a potentially greater sentence for the child sexual abuse conviction on remand would violate his due process rights. Its analysis focused on CJP section 12-702(b), *see footnote 9, supra*, in particular the provision that on remand, the court "may not impose a sentence more severe than the sentence previously imposed for the offense[.]" *Id.* at 23. The Court concluded that the word "offense" "means not simply one count in a multicount charging document, but rather the entirety of the sentencing package that takes into account each of the individual crimes of which the defendant was found guilty." 447 Md. at 26–27. The Court agreed that, "'[a]fter an appellate court unwraps the [sentencing] package and removes one or more charges from its confines, the sentencing judge, herself, is in the best position to assess the effect of the withdrawal and to redefine the package's size and shape (if, indeed, redefinition seems appropriate).'" *Id.* at 28 (quoting *United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989)).

The Court held that under the sentencing package approach, the "sentence" in multicount cases is the aggregate of the sentences on the individual counts. Thus, "a defendant's sentence will be considered to have increased under § 12-702(b) only if the total sentence imposed after retrial or on remand is greater than the originally imposed sentence." 447 Md. at 30. Therefore, so long as the sentence for child sexual abuse imposed on remand did not result in a total executed sentence of more than 40 years—the total executed sentence originally imposed—there would be no increase in sentence within the meaning of CJP section 12-702.

For our purposes, a comment made by the Court in a footnote is pertinent. The Court noted that its construction of CJP section 12-702(b) "does not result in unfair prejudice to a defendant who has been successful on appeal in having one or more, but not all, convictions and/or sentences vacated." *Twigg*, 447 Md. at 29 n.13. It cited *Greenlaw v. United States*, 554 U.S. 237 (2008), in which the Supreme Court explained that in multicount "sentencing package cases," the appellate court "*may* vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the [federal sentencing factors]." 554 U.S. at 253 (emphasis added). When that happens, the trial court can impose longer sentences on the counts where the original sentences were vacated solely for sentencing package purposes, "but yielding an aggregate sentence no longer than the aggregate sentence initially imposed." *Id.*

This comment makes clear that it is within the discretion of the appellate court in an appeal in a multicount case to vacate all the sentences when less than all of the

convictions/sentences must be vacated. The appellate court is not required to vacate all the sentences. *Twigg*, 447 Md. at 30 n.14 (stating that in an appropriate case the appellate court may vacate "all sentences originally imposed on those convictions and sentences left undisturbed on appeal, so as to provide the court maximum flexibility on remand to fashion a proper sentence that takes into account all of the relevant facts and circumstances").

In the case at bar, this Court vacated the mandatory minimum sentence of 25 years' imprisonment without parole for attempted armed robbery (Count I) but did not vacate the consecutive 10 year sentence, with all but 5 years suspended, for use of a handgun (Count 5) and the consecutive sentence of 10 years, with all but 5 years suspended, for conspiracy (Count 7). It was within this Court's discretion not to vacate those sentences, and their consecutive nature was a part of them. Because those sentences were not vacated on appeal, they were not before the resentencing court to reconsider on remand.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**